(No. 73681.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN BUSH, Appellee.

*Opinion filed November 18, 1993.*

Roland W. Burris, Attorney General, of Springfield, and Gary V. Johnson and David R. Akemann, State's Attorneys, of Geneva (Norbert J. Goetten, William L. Browers and Martin P. Moltz, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

G. Joseph Weller, Deputy Defender, and Barbara R. Paschen, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Following a jury trial in the circuit court of Kane County, defendant, John Bush, was convicted of home invasion (Ill. Rev. Stat. 1989, ch. 38, par. 12—11) and aggravated battery (Ill. Rev. Stat. 1989, ch. 38, par. 12—

4(b)(1)). The trial court sentenced defendant to six years' imprisonment on the home invasion conviction and two years' imprisonment on the aggravated battery conviction, with the sentences to run concurrently. The appellate court subsequently reversed on the grounds that the trial court had erroneously submitted to the jury a non-IPI instruction concerning the limited-authority doctrine. (227 Ill. App. 3d 81.) We granted the State's petition for leave to appeal (134 Ill. 2d R. 315) and now affirm the judgment of the appellate court.

According to evidence presented at defendant's jury trial, at approximately 2 a.m. on August 30, 1989, Joyce Fay was asleep in her Carpentersville home with her daughters Rebecca Cuniff and Christy Fay; her son, Michael Cuniff; her granddaughter, Meghan Burrows; and Rebecca's boyfriend, John McPhee. Also present in the home that morning were family friends Chris and Holly Huber, and Mike Ferraro, a friend of the Hubers.

Michael Cuniff testified that he was sleeping near the front door of the Fay residence at approximately 2 a.m. when he was awakened by a knock at the door. As he opened his eyes, he saw five or six men run through the house. One man carried a wooden stick, another an aluminum frame, and defendant carried a crowbar. Cuniff asked the men why they were there and told them to leave. The men replied that they would not leave until they received their money. After the men located and surrounded Michael Ferraro in the hallway, defendant seized him by the neck. Cuniff testified that John McPhee attempted to exit one of the bedrooms, but was restrained. Cuniff watched as the men yelled at and slapped Ferraro. When defendant hit Ferraro, McPhee left the bedroom and grabbed defendant. Defendant and the other men then began punching and kicking McPhee. Cuniff stated that the fighting lasted approximately 10

minutes. Cuniff testified that he did not invite the men into his home or hear anyone else do so.

John McPhee testified that he was awakened by noises emanating from the hall and, upon attempting to exit the bedroom, saw Ferraro surrounded by several men. The men were grabbing Ferraro's shirt and shaking their fists at him. Ferraro looked frightened and told McPhee to call the police. Defendant and the other men then "jumped" Ferraro, prompting McPhee to enter the brawl. McPhee testified that during the fight he was punched, kicked, and struck with the crowbar and a wooden stick, sustaining several bruises and a cut on the head which required 12 stitches.

Salvatore Macaluso, a Carpentersville police officer, arrived on the scene shortly after defendant and the other men had left the Fay residence. Macaluso testified that the front door showed signs of recent damage; the inside door jamb and the striker plate had been forced off the wall, the lock was hanging out of the door, and the door itself was cracked and broken. Macaluso conceded that this information was not contained in his incident report. Joyce Fay's testimony confirmed that, after the incident, her front door had "little dents," and the lock "looked like it was pushed in kind of."

Mathew Huisel testified that he and a group of his friends, including defendant, had gone to the Fay residence looking for Michael Ferraro. Huisel stated that the group had given Ferraro $900 to buy drugs, but that he had taken it and never returned. Huisel testified that the men approached the house, looked in the windows, and saw Ferraro. They then knocked on the door and informed Chris Huber that they were looking for Ferraro. According to Huisel, Huber denied that Ferraro was in the house and invited the men inside to prove this point. Huisel further testified that he did not see defendant strike anyone in the Fay residence. The State impeached

Huisel with his prior written statement to police wherein he said that he and his friends were not invited into the residence and that he saw defendant strike McPhee on the head. Huisel explained that the police had been concerned only with whether the men had been invited inside by the homeowner, Joyce Fay, and it was for this reason that he told them there had been no invitation.

Defendant testified that on August 30, he and his friends went to the Fay home to get their money back from Ferraro. Defendant stated that when Chris Huber answered the door and said that Ferraro was not there, defendant told him that all they wanted was their money and that they did not mean to make trouble. Defendant testified that Huber then repeated that Ferraro was not there, and invited the men in to look for themselves. Someone said Ferraro was in the basement, so everyone ran downstairs.

Defendant further testified that when he reached the basement, one of his friends had found Ferraro and had been given a portion of the money. Everyone then went upstairs and defendant was attempting to retrieve the balance of the money from Ferraro when Rebecca Cuniff emerged from her bedroom and yelled at them. McPhee emerged from the bedroom and immediately began to punch one of the men. Someone else began to fight with Ferraro, then Ferraro ran out the back door. Defendant stated that, although others were still yelling and fighting, he then left the residence. Defendant denied threatening or striking anyone, but admitted entering the Fay residence with the crowbar and possessing it during the entire incident, explaining that he took the crowbar because he had been warned that they would need to protect themselves.

The record shows that after closing arguments the trial court submitted to the jury, *inter alia*, IPI instructions 11.21 and 11.22 concerning home invasion (Illinois

Pattern Jury Instructions, Criminal, Nos. 11.21, 11.22 (2d ed. 1981)). Over defendant's objections, the court supplemented these instructions with the following non-IPI instruction concerning the limited-authority doctrine:

"For purposes of the offense of home invasion, an entry into the dwelling in question is unauthorized even when initially invited when the defendant or one for whose conduct he is legally responsible commits illegal acts within the dwelling."

On direct review of defendant's convictions, the appellate court held that giving this non-IPI instruction was reversible error because it "had the potential to confuse the jury regarding the elements of the offense of home invasion." (227 Ill. App. 3d at 90.) We agree.

Under our Rule 451(a) (134 Ill. 2d R. 451(a)), when an IPI criminal instruction does not accurately state the law with respect to a particular subject, the trial court may, in its discretion, give a non-IPI instruction on the subject. (*People v. Blackwell* (1979), 76 Ill. App. 3d 371, 379.) In this appeal, the State maintains that the trial court properly exercised its discretion by submitting the non-IPI instruction concerning the limited-authority doctrine to the jury. However, while, as we recently discussed in *People v. Peeples* (1993), 155 Ill. 2d 422, the limited-authority doctrine is applicable to private residences, we find that here the trial court abused its discretion by submitting to the jury a non-IPI instruction which misstated the doctrine.

In *Peeples*, this court stated that when a defendant comes to a private residence and is invited in by the occupant, the authorization to enter is limited and that criminal actions exceed this limited authority. (*Peeples*, 155 Ill. 2d at 487.) No individual who is granted access to a dwelling can be said to be an authorized entrant if he intends to commit criminal acts therein, because, if such intentions had been communicated to the owner at

the time of entry, it would have resulted in the individual's being barred from the premises *ab initio*. (See *People v. Fisher* (1980), 83 Ill. App. 3d 619, 622-23.) Thus, the determination of whether an entry is unauthorized depends upon whether the defendant possessed the intent to perform a criminal act therein at the time entry was granted. (*Fisher*, 83 Ill. App. 3d at 623; see also *People v. Hudson* (1983), 113 Ill. App. 3d 1041, 1045 (interpretation of language "without authority" in home invasion statute should be consistent with meaning given same language in burglary statute).) If, as in *Peeples*, the defendant gains access to the victim's residence through trickery and deceit and with the intent to commit criminal acts, his entry is unauthorized and the consent given vitiated because the true purpose for the entry exceeded the limited authorization granted. Conversely, where the defendant enters with an innocent intent, his entry is authorized, and criminal actions thereafter engaged in by the defendant do not change the status of the entry. In this case, the non-IPI instruction given by the trial court failed to make this distinction and thus failed to accurately state the law.

While the trial court has discretion to allow non-IPI instructions which cover subjects that it determines the jury should be instructed upon, tendering such instructions is only proper if they are accurate, simple, brief, impartial, nonargumentative statements of the law. (134 Ill. 2d R. 451(a); *People v. Ramey* (1992), 151 Ill. 2d 498, 536.) Additionally, jury instructions should not be misleading or confusing (*People v. Baczkowski* (1989), 180 Ill. App. 3d 17, 25); and the giving of conflicting instructions, one of which is a correct statement of law and the other an incorrect statement of law, is not harmless error. (*People v. Haywood* (1980), 82 Ill. 2d 540, 545.) "Such contrary instructions prevent the jury from performing its constitutionally appointed function because it

has not been properly informed of the law to be applied in a particular case." *Haywood*, 82 Ill. 2d at 545.

In *Haywood*, the defendant was found guilty of murder following a jury trial at which he had adduced evidence establishing that he was intoxicated at the time of the alleged crime. The State submitted two instructions regarding the defense of voluntary intoxication, one IPI and one non-IPI instruction, and the court gave both to the jury. On appeal, Haywood argued that the State's non-IPI instruction was misleading to the jury in that it implied a higher degree of intoxication than was necessary to constitute the defense. Thus, Haywood contended, the State's instruction was not an accurate statement of the law and required reversal. This court agreed with Haywood and held, *inter alia*, that the State's non-IPI instruction was confusing, ambiguous and conflicted with the IPI instruction given, stating:

> "The jury could have construed this [non-IPI] instruction as requiring the defendant to be devoid of any mental activity whatsoever or to be in a state of unconsciousness. This is not the law in Illinois, and the trial court committed reversible error in allowing [the non-IPI] instruction *** to be given to the jury." *Haywood*, 82 Ill. 2d at 546.

Turning to the case at bar, we note several similarities between *Haywood* and the situation presented here. In *Haywood*, the defendant argued that he was not guilty of murder based upon the affirmative defense of voluntary intoxication, whereas here, defendant contends that he was not guilty of home invasion because his entry into the Fay's residence was authorized. Although defendant's claim is not an affirmative defense, it would, if believed by the jury, support his acquittal where unauthorized entry is the gravamen of the offense of home invasion. (*Peeples*, 155 Ill. 2d at 487.) Additionally, in *Haywood*, the trial court gave the jury the approved IPI instruction defining the affirmative defense and a non-

IPI instruction which misstated the law and allowed the jury to find the defendant guilty, even if he possessed the degree of intoxication necessary to constitute the defense. Correspondingly here, the trial court gave the approved IPI instructions concerning home invasion but also gave a non-IPI instruction which misstated the law and allowed the jury to find defendant guilty even if he possessed the nonculpable mental state indicative of an authorized entry. Therefore, as in *Haywood*, we find that the non-IPI instruction given here served only to confuse the jury by inaccurately redefining the law.

In the instant case, there was some evidence of record whereby the jury could have concluded that defendant did not have a culpable mental state at the time he was invited into the dwelling. Thus, the giving of a non-IPI instruction which prevented the jury from reaching this conclusion if it followed the instruction was clearly reversible error. See *People v. Reddick* (1988), 123 Ill. 2d 184 (jury instructions found to be "grave error" where they failed to appropriately state burdens of proof and were misleading and confusing such that they essentially assured that, if the jury followed them, it could not convict a defendant of the lesser included offense of voluntary manslaughter); *People v. Nugin* (1981), 99 Ill. App. 3d 693 (aggravated battery issues instructions amounted to grave error where they misled jury because they deceptively implied that even if a defendant were acting under compulsion, he could nonetheless be held responsible for the criminal acts of another).

Additionally, we agree with the appellate court that " '[w]e are not prepared to encourage a revival of the discredited practice of culling passages from opinions and incorporating them into instructions contrary to the purpose for which the drafting committees on jury instructions were created and to the mandate of Rule 451.' " (227 Ill. App. 3d at 89, quoting *People v. Davis*

(1988), 173 Ill. App. 3d 300, 310.) However, because we now believe an instruction regarding the limited authority doctrine is necessary to augment the IPI instructions on home invasion, we suggest that, until such time as the drafting committee proposes such an instruction, an entry into a dwelling be defined as unauthorized, even when initially invited, when the defendant or one for whose conduct he is legally responsible has, at the time of entry, an intent to commit criminal acts within the dwelling.

For the reasons stated herein, the judgment of the appellate court is affirmed.

*Judgment affirmed.*