NO. 4-03-0632                Filed: 4/25/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, <br>    Plaintiff-Appellee, <br>        v. <br> JASON A. MURRAY, <br>    Defendant-Appellant. | ) Appeal from <br> ) Circuit Court of <br> ) McLean County <br> ) No. 02CF385 <br> ) <br> ) Honorable <br> ) Elizabeth A. Robb, <br> ) Judge Presiding. |

---

JUSTICE APPLETON delivered the opinion of the court:

Defendant, Jason A. Murray, appeals from his conviction of home invasion (720 ILCS 5/12-11(a)(5) (West 2002)). He makes a twofold argument. First, the trial court misstated the law when answering a question by the jury during deliberations. Second, the enhanced penalty of 25 years' imprisonment for home invasion involving great bodily harm caused by the discharge of a firearm (720 ILCS 5/12-11(c) (West 2002)) is unconstitutionally disproportionate to the penalty for another offense with identical elements, namely, armed violence predicated on trespass to a residence and involving great bodily harm caused by the discharge of a firearm (720 ILCS 5/33A-2(c), 33A-3(b-10), 19-4(a)(2), 19-4(b) (West 2002)). See Ill. Const. 1970, art. I, §11.

We find reversible error in the instructions and, therefore, do not reach the constitutional issue. See People v. Lee, 214 Ill. 2d 476, 482, 828 N.E.2d 237, 243 (2005) ("a court will avoid determining a constitutional question if the case can be resolved on other, nonconstitutional grounds"). We reverse the trial court's judgment

and remand this case for a new trial.

## I. BACKGROUND

The State proceeded to trial on two counts: aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 2002)) and home invasion involving great bodily harm caused by the discharge of a firearm (720 ILCS 5/12-11(a)(5) (West 2002)). Both counts arose out of the same incident: the shooting of Charles Gizzarelli on April 2, 2002. Defendant pleaded self-defense.

At trial, Gizzarelli testified he lived at 814 West Front Street in Bloomington. Thomas Monte owned the house. The afternoon of April 2, 2002, defendant stopped by and delivered to Gizzarelli, in clear plastic wrapping, what was supposed to be crack cocaine. Instead, it was chunks of drywall plaster. Gizzarelli refused to pay. Defendant accused him of substituting the plaster for the genuine cocaine he had delivered. They argued, and defendant left. A half hour to an hour later, Gizzarelli received a call on his cellular telephone: it was defendant, and "he wanted to come over." Gizzarrelli said okay; he assumed that defendant wanted to "straighten out his little error." Upon returning to the house, defendant telephoned Gizzarrelli again so he "could let him in." When Gizzarelli opened the back door, he was surprised to see a vehicle parked a couple of feet from the door, but no one in sight. Defendant, who "was on the side of the door," then "rushed into the house," and, to Gizzarelli's further surprise, another man was with him. This other man followed defendant inside and closed the door. Defendant "started waving [a pistol] and saying he wanted money." Gizzarelli still refused to pay. They argued. Defendant struck Gizzarelli in the side of the face with the pistol and stepped back. "The fellow with him

- 2 -

*** said[,] ['S]hoot him[,] J Rock, shoot him.[']"  (J Rock  was defendant's nickname.) Defendant pointed the pistol at Gizzarelli's groin and fired.  The bullet went through Gizzarelli's penis and thigh.  He fell.  Defendant and his friend dashed out of the house and drove away.

Another resident of the house, Brandy Stine, came downstairs and called 9-1-1.  She never actually saw Gizzarelli get shot, but she saw a vehicle speed away. Monte testified he was in the basement at the time of the shooting.

Upon their arrival, the police did a "protective sweep" of the house and found a bong, a scale, and individually wrapped bags of cocaine upstairs as well marijuana plants growing in the basement.  At trial, Gizzarelli admitted he had a conviction of criminal drug conspiracy from 1994 and a pending charge of delivery of a controlled substance.

Defendant testified he was a seller of marijuana and Gizzarelli was his supplier.  Gizzarelli had delivered to him some marijuana to sell, and defendant had sold some of it and smoked the rest.  He owed Gizzarelli $250 of the sale proceeds but had only $40.  On April 2, 2002, he went to 814 West Front Street to work out a payment plan with Gizzarelli.  They got into an argument, and Gizzarelli and his "roommate," Monte, began pummeling defendant in the face.  Defendant landed a blow on Gizzarelli's face.  Monte grabbed defendant, and the three of them "got to tussling." A pistol fell out of someone's jacket pocket--either Gizzarelli's or Monte's, defendant did not know which.  At that point, defendant began fearing for his life.  He scrambled for the pistol, aimed it at the floor, and fired "a warning shot"--intending merely to scare his assailants and "back them up," not to shoot anyone.  Then he ran out the door.  He

- 3 -

threw the pistol into a garbage can outside his sister's house. The police arrested him 16 days later in Chicago.

The trial court gave the jury Illinois Pattern Jury Instructions, Criminal, No. 11.54 (4th ed. 2000) (IPI Criminal 4th), which set forth the elements of the offense of home invasion, including entry of someone else's dwelling place "without authority." The court also gave the jury IPI Criminal 4th No. 11.53A, which stated as follows:

"The defendant's entry into a dwelling of another is 'without authority' if, at the time of entry into the dwelling, the defendant has an intent to commit a criminal act within the dwelling[,] regardless of whether the defendant was initially invited into[,] or received consent to enter[,] the dwelling.

However, the defendant's entry into the dwelling is 'with authority' if the defendant enters the dwelling without criminal intent and was initially invited into[,] or received consent to enter[,] the dwelling, regardless of what the defendant does after he enters." IPI Criminal 4th No. 11.53A.

During deliberations, the jury sent the trial court the following handwritten note, signed by the foreperson:

"Charge of Home Invasion

The Phrase

'The defendant has an intent to commit a criminal act[.]'

- 4 -

[I]s 'intent to commit a criminal act' limited to the particular crime in question[,] or [does] 'intent to commit a criminal act' encompass other crimes[,] such as a [d]rug [d]eal[?]"

The prosecutor recommended answering "there [was] no such limitation in this instruction and leav[ing] it at that."

Defense counsel argued:

"I think it is the intent of the statute that it refers to crime that he is committing ***. [The jury is] talking about a drug deal that had occurred sometime earlier[,] and I don't think that is what the statute does intend. [I]f he comes in to make payment for selling drugs for them[] [and] a fight breaks out later, that doesn't make it home invasion. He has entered with a purpose that was approved by the home owner[,] and the home invasion charge is not designed to address that issue. The question they are asking is[,] does it mean did he intend to enter the home with the intention of shooting him or robbing him[?] That is what the statute is meant to address. [T]hey seem to be saying if he intended to come in and pay off the drug deal he'd made earlier, that would be participating in a crime. But that is not the crime against the home owner[,] and that is not what the statute

- 5 -

intends to address, so I think we can delineate that for them."

The prosecutor responded: "I don't think it is for the lawyers or the court to speculate as to the motive the jury has for sending out this question. *** They have asked a straightforward question, [I]s there such a limitation in this instruction[?]" The text of the pattern instruction contained no such exception, and, therefore, the answer was no. The prosecutor recommended replying that "there [was] no such limitation in that particular phrase in the instruction."

The trial court followed the prosecutor's recommendation. It typed the following answer on the back of the jury's note: "There is no such limitation."

The jury found defendant guilty of both charges: aggravated battery and home invasion involving great bodily harm caused by the discharge of a firearm. The trial court vacated the conviction for aggravated battery and, on the remaining charge of home invasion, imposed the minimum enhanced sentence of 31 years' imprisonment (6 years for home invasion plus the mandatory 25-year enhancement for inflicting great bodily harm with a firearm). See 720 ILCS 5/12-11(c) (West 2002).

This appeal followed.

## II. ANALYSIS

### A. The Error in the Instructions

In People v. Bush, 157 Ill. 2d 248, 254, 623 N.E.2d 1361, 1364 (1993), the supreme court held that if an invitee entered someone else's residence with the intent to commit a crime therein, the entry was "without authority" within the meaning of the home-invasion statute. The supreme court gave the following rationale for this limited-

authority doctrine. Generally, the occupant and invitee have an implicit understanding that criminal activity is outside the scope of the invitation. Bush, 157 Ill. 2d at 254, 623 N.E.2d at 1364. A visitor would normally expect to be turned away if the occupant believed the visitor had a criminal intent. Bush, 157 Ill. 2d at 253-54, 623 N.E.2d at 1364. An invitee, who, at the time of entry, has "concealed criminal purposes" effectively gains admission by "misrepresentation and subterfuge"--a fraud by silence-- rather than "in accordance with the will of the occupant[]." People v. Fisher, 83 Ill. App. 3d 619, 622-23, 404 N.E.2d 859, 862-63 (1980). In such a case, the occupant's consent to the entry is "vitiated because the true purpose for the entry exceeded the limited authorization granted." Bush, 157 Ill. 2d at 254, 623 N.E.2d at 1364. If, however, the invitee enters the residence with an innocent intent and only later develops a criminal intent once he or she is inside, this does not change the fact that the entry itself was with an innocent intent and, therefore, was with the occupant's authorization. Bush, 157 Ill. 2d at 254, 623 N.E.2d at 1364.

During deliberations, the jury asked whether the "intent to commit a criminal act," in the trial court's instruction on the meaning of the phrase "without authority" (IPI Criminal 4th No. 11.53A), was "limited to the particular crime in question" or whether it also "encompass[ed] other crimes[,] such as a [d]rug [d]eal." Defendant argues that, in this query, the jury "clearly indicated [its] belief that the defendant entered Gizzarelli's home with [the] intent to engage in a drug deal with Gizzarelli, but not to threaten Gizzarelli with a gun or to shoot him." He argues that by responding with an instruction suggesting that "a drug deal" could be a "criminal act" within the meaning of IPI Criminal 4th No. 11.53A, the court erred: "[a] defendant who visits a homeowner,

by invitation, with the intent to commit a crime[,] such as a drug deal[,] in which the homeowner is a full and knowing participant does not exceed the scope of the homeowner's authorization to enter."

The State argues that the trial court's answer to the jury's question was correct because Bush laid down a "bright-line rule" without expressing any exception: entry with criminal intent equals entry without authority. According to the State, defendant is "confus[ing] a homeowner's invitation with another's authority to enter," and "Bush does not state that [those] two concepts necessarily converge." Moreover, the State argues that under defendant's interpretation of the limited-authority doctrine, the occupant of a residence could "effectively waive another occupant's protection" by consenting to a visitor's entry of the residence for the purpose of committing an act of violence against the other occupant. Such an outcome, the State argues, would be an absurdity the legislature did not intend.

The State's hypothetical facts are not the facts before us in the present case. The record contains no evidence that Gizzarelli consented to defendant's entry of 814 West Front Street with the understanding that defendant would victimize another occupant of the house. Therefore we need not--and do not--decide whether the entry would be "with authority" under such circumstances.

"[T]he precedential scope of a decision is limited to the facts before the court." People v. Palmer, 104 Ill. 2d 340, 345-46, 472 N.E.2d 795, 798 (1984). We should read Bush as "authority only for that which the court decided under the particular facts there presented" (Department of Transportation v. La Salle National Bank, 102 Ill. App. 3d 1093, 1097, 430 N.E.2d 286, 290 (1981)) rather than mechanically apply its

holding to a significantly different set of facts.  In <u>Bush</u>, the defendant and five or six other men entered Joyce Fay's home for the purpose of getting back their money from one of her guests,  Mike Ferraro.  They had given Ferraro $900 to buy drugs for them, but he had never returned.  <u>Bush</u>, 157 Ill. 2d at 251, 623 N.E.2d at 1363.  At trial, some witnesses testified that the defendant and his friends barged into the house uninvited and beat up Ferraro.  <u>Bush</u>, 157 Ill. 2d at 250-51, 623 N.E.2d at 1362-63.  Other witnesses testified that an occupant of the house let the defendant and his friends inside for the purpose of seeing whether Ferraro was present in the house and, if so, merely talking with him.  <u>Bush</u>, 157 Ill. 2d at 251-52, 623 N.E.2d at 1363.  Our point is this:  no one claimed that an occupant of Fay's house invited the defendant and his friends inside for the purpose of committing a crime.  Therefore <u>Bush</u> does not stand for the proposition that a criminal intent <u>shared</u> by the occupant and invitee negates the invitee's authority to enter the residence.  In a basic, commonsense way, the inquiry always remains whether the occupant authorized the defendant's entry.

     <u>Bush</u> addressed a discrepancy between two persons' intentions at the time of entry into the dwelling place:  the intention of the occupant and the intention of the invitee.  The occupant was the one who could confer authority to enter the dwelling place.  We are puzzled by the State's assertion that defendant is "<u>confus[ing]</u> a homeowner's invitation with another's authority to enter"--as if the two concepts were unrelated.  (Emphasis added.)  The lack of authority would be owing to the discrepancy between the occupant's intention in extending the invitation and the invitee's intention in accepting it:  all along, the invitee harbored a secret intent to commit a crime; the occupant intended that the invitee not do so (or such would have been the occupant's

- 9 -

intent if the matter had come up).

The State quotes language from Bush that, taken out of context, might suggest that even a consensual crime, such as a "drug sale," negates authority. The supreme court said: "[T]he determination of whether an entry is unauthorized depends upon whether the defendant possessed the intent to perform a criminal act therein at the time entry was granted." Bush, 157 Ill. 2d at 254, 623 N.E.2d at 1364. But, again, that holding, expressed in IPI Criminal 4th No. 11.53A, derives from a rationale quoted in the committee note to that instruction: "'[I]f such intentions had been communicated to the owner at the time of entry, it would have resulted in the individual's being barred from the premises ab initio.'" IPI Criminal 4th No. 11.53A, Committee Note, quoting Bush, 157 Ill. 2d at 253-54, 623 N.E.2d at 1364. If, under the facts of a case, the rationale in Bush would not hold true--if the communication of the visitor's criminal intent would have led the occupant to invite the visitor inside rather than bar the visitor from the premises--then, obviously, the holding of Bush is inapplicable with respect to that particular criminal intent, and the pattern instruction may require modification or qualification for purposes of the case at hand (see 177 Ill. 2d Rs. 451(a), (f)). "[T]he [pattern] instructions were never meant to state the law of Illinois in all possible situations. As a consequence, any trial court faced with a unique factual situation or point of law should not give any instructions, whatever their source, without carefully evaluating their individual accuracy and their cumulative effect upon the jury." Dezort v. Village of Hinsdale, 77 Ill. App. 3d 775, 777, 396 N.E.2d 855, 857 (1979).

"Very slight evidence upon a given theory of a case will justify the giving of an instruction" (People v. Jones, 175 Ill. 2d 126, 132, 676 N.E.2d 646, 649 (1997)), but

we find no evidence at all, not even "very slight evidence," that defendant had a unilateral criminal intent to engage in a drug deal when he entered 814 West Front Street. Gizzarelli testified he consented to defendant's entry, on both occasions, for the express purpose of procuring cocaine from defendant. It was true, as the trial court instructed the jury, that the criminal intent need not have been limited to the "crime in question," aggravated assault. Defendant could have entered the residence, for instance, with the intention of merely threatening Gizzarelli or waving the pistol in his face. In its answer, however, to the jury's query, the court should have disabused the jury of the notion that defendant's intent to engage in "a drug deal" counted as an "intent to commit a criminal act" within the meaning of IPI Criminal 4th No. 11.53A. Defendant entered the dwelling without authority if, at the time of entry, he intended to commit a crime therein and, had Gizzarelli known of that intent, he would have barred defendant from the premises. Gizzarelli would not have barred defendant from the premises because of defendant's intention to sell him narcotics; by Gizzarelli's own admission, that was precisely why he let defendant in.

## B. The Availability of a Remedy

The trial court gave the jury some instructions that conflicted with each other. On the one hand, the court instructed the jury that "[t]o sustain the charge of home invasion, the State [had to] prove the following proposition[]," among others: "[t]hat the defendant knowingly and without authority entered the dwelling place of another." (Emphasis added.) IPI Criminal 4th No. 11.54. One would reasonably understand the phrase "without authority" as meaning that no occupant of 814 West Front Street had authorized defendant to come into the house. The court further

- 11 -

instructed the jury that entering a residence with a criminal intent negated one's authority to enter.  As we have explained, the assumption undergirding that instruction is that the occupant would have turned the visitor away had the occupant known of the visitor's criminal intent.

On the other hand, by its answer to the jury's note, the trial court at least impliedly assented to the proposition that defendant's intent to engage in "a drug deal," a consensual transaction, made his entry of Gizzarelli's residence an entry "without authority."  This latter proposition created a contradiction in the instructions.  Regardless of whom one chooses to believe--Gizzarelli or defendant--Gizzarelli wanted to conduct a drug-related transaction with defendant and authorized his entry into the residence for that very purpose.  The net effect of these instructions is that, on the one hand, the court told the jury that the entry had to be "without authority," but, on the other hand, suggested that the entry could be "with authority."

"[T]he giving of conflicting instructions, one of which is a correct statement of law and the other an incorrect statement of law, is not harmless error."  Bush, 157 Ill. 2d at 254, 623 N.E.2d at 1364.  "'Such contrary instructions prevent the jury from performing its constitutionally appointed function because it has not been properly informed of the law to be applied in a particular case.'"  Bush, 157 Ill. 2d at 254-55, 623 N.E.2d at 1364, quoting People v. Haywood, 82 Ill. 2d 540, 545, 413 N.E.2d 410, 413 (1980); see also People v. Pollock, 202 Ill. 2d 189, 212, 780 N.E.2d 669, 682 (2002).

Apart from the line of cases holding that the giving of conflicting instructions is per se reversible error, we do not find the error to be harmless in light of the evidence in the record.  "'Even though error may have been committed in giving or

refusing instructions[,] it will not always justify reversal when the evidence of [the] defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty.'" People v. Jones, 81 Ill. 2d 1, 9, 405 N.E.2d 343, 346 (1979), quoting People v. Ward, 32 Ill. 2d 253, 256, 204 N.E.2d 741, 743 (1965). We do not find it "blatantly evident from the circumstances" that defendant entered Gizzarelli's residence, the second time, with a criminal intent unapproved by Gizzarelli. See Jones, 81 Ill. 2d at 10, 405 N.E.2d at 346. A reasonable jury could have found that defendant entered 814 West Front Street with the intent of assaulting Gizzarelli--but that finding was not inevitable. A reasonable jury could have alternatively found that defendant routinely carried a firearm (as many drug dealers do) and that he entered Gizzarelli's residence with the intent merely to have a nonviolent argument with him, but that offending words were spoken and the argument escalated into intimidation and violence. This trial was mostly a swearing contest between Gizzarelli and defendant.

### III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment and remand this case for a new trial.

Reversed and remanded.

KNECHT, J., concurs.

McCULLOUGH, J., dissents.

JUSTICE McCULLOUGH, dissenting:

I respectfully dissent from the majority's determination that the trial court did misstate the law regarding the limited-authority doctrine in its response to the jury question. I believe the arguments made by the State in its brief and its application of Bush are appropriate. The trial court did not commit reversible error with respect to the jury instructions. Because the majority did not address the constitutional issue, it will not be addressed in this dissent.