2021 IL App (2d) 200546-U
No. 2-20-0546
Order filed December 15, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-66 |
| JENNIFER L. DENISON, | ) ) ) | Honorable Philip G. Montgomery, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices Zenoff and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:   At defendant's trial on home invasion charges for entering the victim's home and battering her, a rational jury could find that defendant entered the home with the intent to batter the victim; thus, (1) the evidence was sufficient to support defendant's conviction of home invasion, as defendant's entry with the intent to batter the victim made the entry "without authority"; (2) defendant was not entitled to a new trial based on evidence that the victim's son let defendant into the home before the physical altercation; and (3) defendant was not entitled to a lesser included offense instruction on battery.

¶ 2   Defendant, Jennifer L. Denison, entered the home of Amanda Underwood, a neighbor and friend, and engaged in a physical fight with her. Based on this incident, defendant was charged with two counts of home invasion (720 ILCS 5/19-6(a)(1), (a)(2) (West 2018)) and one count each

of battery (*id.* § 12-3(a)(1)), and criminal trespass to a residence (*id.* § 19-4(a)(2)). The State later dismissed the battery and criminal-trespass-to-a-residence charges. At defendant's jury trial, defense counsel considered tendering a battery instruction but never did tender it. The jury found defendant guilty of both counts of home invasion. Defendant filed a posttrial motion, arguing that she should be granted a new trial because she discovered after trial that Underwood's son let defendant into Underwood's home before the fight began. The trial court denied the motion. The court merged the two home invasion convictions and sentenced defendant to seven years' imprisonment. At issue on appeal is whether (1) defendant was proved guilty of home invasion beyond a reasonable doubt—specifically, whether she entered Underwood's home without authority; (2) defendant's posttrial motion for a new trial should have been granted because newly discovered evidence established that defendant entered Underwood's home with authority; and (3) defense counsel was ineffective for failing to tender a battery instruction. Because the evidence at trial established that defendant entered Underwood's home with the intent to commit a battery, all of defendant's arguments fail. Thus, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The first count of home invasion in the indictment (count I) alleged that:

> "[O]n or about January 27, 2018, [defendant] committed the offense of home invasion *** in that said defendant knowingly, and without authority, entered the dwelling place of *** Underwood *** knowing *** Underwood to be present within that dwelling place and intentionally caused injury to *** Underwood in that she struck *** Underwood causing bruising and bit her."

The second count of home invasion (count II) materially differed from count I only in that it alleged that defendant entered Underwood's home without authority "and while armed with a dangerous

weapon, a knife, used force against *** Underwood in that said defendant hit, bit, and scratched *** Underwood causing bruising."

¶ 5    When defendant was arraigned, she told the trial court, "I don't understand why I'm being charged with home invasion." The court read the charges to defendant, and defendant stated, "I understand [the charges], but I don't agree."

¶ 6    The evidence at trial revealed that Underwood lived in a mobile home with her two children, Landon and Lewis Leadingham, and her children's father. Landon was nine years old, and Lewis was five years old. Defendant lived nearby with her boyfriend and children, including her two boys who were around the same ages as Landon and Lewis.

¶ 7    Underwood testified that she met defendant in March 2017. Underwood estimated that, before the January 2018 incident, she saw defendant about two to three times per week. They were "close neighbors" who "got along together and spent time together." For example, they drove each other's children to school, their children played together, and their families also socialized.

¶ 8    Underwood testified that, on the afternoon of January 27, 2018, she went out with a friend. When she returned home, she learned that her two boys were over at defendant's house playing with defendant's two boys. All four boys wanted to play video games at Underwood's home, so defendant went over to Underwood's home with her children. Underwood and defendant socialized while the children played video games. Soon thereafter, Underwood and defendant decided to go out for a drink and an appetizer. They left defendant's 19-year-old daughter in charge. When they returned a short time later, defendant went home with her children.

¶ 9    Underwood testified that, after defendant left, she went to the bathroom in her home. She had barely finished using the facilities when defendant "came barging in the bathroom." Underwood stated that defendant "came at [her]." When Underwood told defendant that she was

going to call the police, defendant swore at Underwood and said, "[Y]ou would." Underwood claimed that the next thing she recalled was being in the bathtub and trying to push defendant away from her. Defendant bit her arms and hands. Underwood struck defendant three times in the face, and defendant "took off." Underwood was asked, "So you remember her coming in. Do you remember who struck who first?" Underwood answered, "I believe it was her."

¶ 10    Underwood testified that, once defendant left, she saw Landon and Lewis standing in the bathroom door. Underwood told Landon to get her the phone so that she could call 911. Landon did, and he also gave Underwood a sheathed knife that he recovered from defendant. The police arrived within 10 minutes.

¶ 11    Underwood asserted that neither her front door (which was unlocked) nor her bathroom door was damaged when defendant "barg[ed]" into her home. Moreover, Underwood stated that no argument precipitated the physical fight. Underwood also testified that she "[h]ad [not] told [defendant] that she could walk into [Underwood's] home."

¶ 12    Landon testified that defendant did not knock on the family's front door, she did not ask to come in, and he did not let her into the home. Rather, defendant "[b]arged in." Once inside the home, defendant asked Landon where Underwood was. Landon told defendant that she was in the bathroom. Defendant proceeded to the bathroom, but Landon did not follow her. Although Landon initially testified that defendant did not appear angry, he later indicated that her tone was "[a] little bit angry." Landon stated that he was not concerned that defendant was in the family's home, as she had come to the house before.

¶ 13    Landon testified that, soon after defendant entered the home, Landon became concerned when he heard yelling coming from the bathroom. He and Lewis proceeded to the bathroom and saw Underwood in the bathtub. Defendant was beating Underwood. Landon saw a sheathed knife

in defendant's pocket. He took the knife out of her pocket and hid it in Underwood's bedroom. Landon then unsuccessfully tried to push defendant away from Underwood. After Underwood hit defendant three times, defendant walked quickly out of the home. Underwood called the police, and Landon gave Underwood the knife.

¶ 14 Officer Daniel Malkowski testified that, when he arrived at the scene, he saw that Underwood, who was very upset and crying, had sustained multiple injuries. Officer Malkowski spoke to one of Underwood's sons, whom Officer Malkowski described as "scared." Although the police could not locate defendant at the scene, she surrendered to the police approximately 45 minutes after the incident.

¶ 15 The State rested, and defendant moved for a directed verdict. Defendant argued that no evidence indicated that defendant had the intent to commit a crime when she entered Underwood's home. The trial court denied the motion.

¶ 16 Thereafter, the trial court asked the parties, "Where are we on jury instructions?" The State advised the court that it had a set of instructions done but that it had not included an instruction on a lesser included offense. Defense counsel remarked, "I have those prepared which I can give to counsel." Counsel continued, "We'll discuss tonight whether we're going to be requesting those, but I have those prepared." Counsel never proffered to the court a lesser-included-offense instruction.

¶ 17 Defendant called Officer Malkowski, who testified that Underwood made written statements after the incident. Defendant then rested.

¶ 18 During closing argument, defense counsel argued that the State's witnesses were not credible and that the evidence was insufficient to prove defendant guilty of home invasion. Counsel stated:

"Ms. Underwood's side of the story is she's in the bathroom, she gets up, and [defendant] just breaks in, barges in, I think, was the word that she used, barges in, and starts beating her for no apparent reason. Why? These people have known each other forever. Why would that happen that way? And I would tell you, ladies and gentlemen, because it didn't.

My client came over there. There's nothing to show that when she came over there, there was any intent in her to commit any crime, to get involved in anything."

¶ 19 The jury was not given a lesser-included-offense instruction. The jury found defendant guilty of both counts of home invasion.

¶ 20 A few weeks after defendant was convicted, a presentence investigation (PSI) report was prepared. Defendant told the PSI investigator that she found the conviction of home invasion " 'upsetting.' " She explained, " 'I believe I should be charged with battery, not home invasion. That's a bit extreme.' "

¶ 21 Defendant filed a posttrial motion for a new trial. She claimed that several women who were in custody with Underwood indicated that Underwood said that her son let defendant into Underwood's home right before the incident. In reply, the State argued that the witnesses' statements were hearsay and, therefore, could be admitted only to impeach Underwood. The State asserted that, under *People v. Smith*, 177 Ill. 2d 53, 83 (1997), such hearsay statements are not a basis to grant a new trial.

¶ 22 At the hearing on the posttrial motion, Heather Adamcyk, Simone Jones, and Shannon Helton testified. These women were in custody with Underwood in the De Kalb County jail in February 2018, the month following the incident. Although their testimony was vague and inconsistent on many points, they all confirmed that Underwood said that her son let defendant

into the home before the altercation with Underwood. The trial court denied the motion, finding the witnesses not credible.

¶ 23 Defendant was sentenced, and this timely appeal followed.

¶ 24 II. ANALYSIS

¶ 25 On appeal, defendant argues that (1) she was not proved guilty of home invasion beyond a reasonable doubt because the State failed to prove that she entered Underwood's home without authority; (2) her posttrial motion for a new trial should have been granted because Adamcyk, Jones, and Helton reported that Underwood said that her son let defendant into her home, and, thus, defendant had the authority to enter; and (3) defense counsel was ineffective for failing to tender a battery instruction. We consider each issue in turn.

¶ 26 A. Reasonable Doubt

¶ 27 We first address whether defendant was proved guilty of home invasion beyond a reasonable doubt. The State has the burden of proving each element of the offense beyond a reasonable doubt. *People v. Maggette*, 195 Ill. 2d 336, 353 (2001). On appeal, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "The weight to be given the witnesses' testimony, the credibility of the witnesses, resolution of inconsistencies and conflicts in the evidence, and reasonable inferences to be drawn from the testimony are the responsibility of the trier of fact." *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). Accordingly, we will not substitute our judgment for that of the jury on issues concerning the weight of the evidence or the credibility of the witnesses. *People v. Brown*, 2013 IL 114196, ¶ 48. We will set

aside a defendant's conviction only if the evidence against her is so improbable or unsatisfactory that it creates a reasonable doubt of her guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 28    Defendant argues that the State failed to prove her guilty of home invasion beyond a reasonable doubt.  As relevant here, section 19-6(a) of the Criminal Code of 2012 provides:

"(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present *** and

* * *

(2) Intentionally causes any injury *** to any person or persons within the dwelling place." 720 ILCS 5/19-6(a) (West 2018).

Defendant argues that here the evidence is lacking that her entry into Underwood's home was "without authority."  *Id.*  Defendant contends that she had Underwood's implied consent to enter her home given their neighborly relationship and friendship.  Thus, to establish that defendant's entry into Underwood's home was "without authority," the State needed to prove that Landon denied defendant entry or voiced an objection when defendant entered.  We disagree.

¶ 29    The problem with defendant's position is that the evidence shows that she entered Underwood's home with the intent to batter Underwood.  This intent vitiated any authority that was previously granted to enter the home.  Thus, even if Landon let defendant in, the fact that she entered with the intent to batter Underwood made the entry "without authority."  *Id.*

¶ 30    Instructive on this point is *People v. Bush*, 157 Ill. 2d 248 (1993).  In *Bush*, our supreme court addressed the limited-authority doctrine as applied to the offense of home invasion.  *Id.* at 253.  The court observed that "when a defendant comes to a private residence and is invited in by

the occupant, the authorization to enter is limited and *** criminal actions exceed this limited authority." *Id.* The *Bush* court added:

"No individual who is granted access to a dwelling can be said to be an authorized entrant if he intends to commit criminal acts therein, because, if such intentions had been communicated to the owner at the time of entry, it would have resulted in the individual's being barred from the premises *ab initio*. [Citation.] Thus, the determination of whether an entry is unauthorized depends upon whether the defendant possessed the intent to perform a criminal act therein at the time entry was granted. [Citations.] If *** the defendant gains access to the victim's residence through trickery and deceit and with the intent to commit criminal acts, his entry is unauthorized and the consent given vitiated because the true purpose for the entry exceeded the limited authorization granted. Conversely, where the defendant enters with an innocent intent, his entry is authorized, and criminal actions thereafter engaged in by the defendant do not change the status of the entry." *Id.* at 253-54.

¶ 31 The evidence, when viewed in the light most favorable to the State, established that defendant entered Underwood's home solely to batter Underwood. According to Landon, defendant "[b]arged in" and asked where Underwood was. Landon, a child, told defendant that his mother was in the bathroom. Rather than wait for Underwood to exit the bathroom, defendant "barg[ed]" into the bathroom and "came at [Underwood]." According to Underwood's unchallenged testimony, no words were exchanged between her and defendant, and Underwood took no action toward defendant before the fight ensued. Rather, the evidence established that defendant attacked Underwood as soon as she entered the bathroom. The reasonable inference to draw from this evidence is that defendant entered Underwood's home with the intent to batter

Underwood. Because this was defendant's intent, she lacked authority to enter Underwood's home, regardless of whether Landon let her in (*id.*) or her relationship with Underwood was such that she was allowed to enter Underwood's home in the past without being let in by Underwood or her family (*People v. Reynolds*, 359 Ill. App. 3d 207, 212 (2005) ("[D]efendant's testimony that he would enter the residence without explicit permission when [one of the residents] knew that he was coming does not establish that [defendant] had implicit authority to enter at will at any time.")).

¶ 32 Citing *People v. Witherspoon*, 2019 IL 123092, ¶ 21, defendant argues that the crucial question on appeal is whether Landon "denied [defendant] freedom to enter." At issue in *Witherspoon* was whether a defendant can be guilty of home invasion when he enters the dwelling of another with the consent of an occupant but in violation of a court order. *Id.* ¶¶ 1, 24. The court determined that an entry into a dwelling is "without authority" if the entry is (1) without the consent of an occupant *or* (2) in violation of a court order. *Id.* ¶ 25 ("[W]e hold that a defendant enters the dwelling place of another 'without authority' when either the occupant has not granted consent to enter or a court order has prohibited entry.").

¶ 33 Defendant misapplies *Witherspoon*. The decision addressed how a court order impacts a defendant's authority to enter another's dwelling. A court order is not involved here. Moreover, *Witherspoon* did not abrogate *Bush*'s limited-authority doctrine. If anything, *Witherspoon* reaffirmed the doctrine by recognizing that an entry without the occupant's consent is an entry "without authority." *Id.* As noted, *Bush* held that the occupant's consent is deemed not to be given where the defendant enters with criminal intent. *Bush*, 157 Ill. 2d at 253-54.

¶ 34                                     B. Newly Discovered Evidence

¶ 35    Defendant next argues that she should be granted a new trial because newly discovered witnesses indicated that defendant entered Underwood's home with authority, and, thus, their testimony would likely change the result at a new trial. "Motions for a new trial based on newly discovered evidence are not looked upon favorably by the courts and must be closely scrutinized." *People v. Harris*, 2020 IL App (5th) 160454, ¶ 52. "Newly discovered evidence warrants a new trial when the evidence (1) has been discovered after trial, (2) could not have been discovered prior to trial through the exercise of due diligence, (3) is material to the issue raised and not merely cumulative, and (4) is so conclusive that it will probably change the result upon retrial." *Id.* "The decision to grant a new trial based on newly discovered evidence is within the sound discretion of the trial court and will not be disturbed absent a showing that the trial court abused its discretion." *Id.* "Abuse may be found only if a trial court's evaluation is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the court." *People v. Beard*, 356 Ill. App. 3d 236, 243 (2005).

¶ 36    Defendant contends that she is entitled to a new trial because "[the witnesses'] testimony, if believed, absolves [defendant] of home invasion because it shows that [defendant] had authority to enter Underwood's residence." We affirm the denial of defendant's motion irrespective of the trial court's credibility findings as to Adamcyk, Jones, and Helton or the fact that their testimony was hearsay and thus admissible only for impeachment purposes (see *Smith*, 177 Ill. 2d at 83). As noted above, the trial evidence indicates that defendant entered Underwood's home with the intent to batter her. Thus, even if defendant were let into Underwood's home, her entry with the intent to batter Underwood nullified any authority she may have had to enter. *Bush*, 157 Ill. 2d at 253-54. This means, of course, that even if Adamcyk, Jones, and Helton were truthful that Underwood said her son let defendant into the home, their testimony would not have changed the result of the

trial in the slightest. Therefore, we conclude that the trial court did not abuse its discretion in denying defendant's motion for a new trial. See *People v. Dinelli*, 217 Ill. 2d 387, 403 (2005) ("[W]e may affirm the circuit court on any basis supported by the record.").

¶ 37                          C. Ineffective Assistance

¶ 38    Last, defendant argues that defense counsel was ineffective. Analyzing whether defense counsel was ineffective requires us to apply the *Strickland* standard. *Strickland v. Washington*, 466 U.S. 668 (1984). "To succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance was objectively unreasonable; and (2) it is reasonably probable that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Rhodes*, 386 Ill. App. 3d 649, 653 (2008). "To satisfy the first prong of the *Strickland* test, a defendant must overcome the strong presumption that counsel's conduct was reasonable." *Id.* Under the second prong, a defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v. Manning*, 241 Ill. 2d 319, 326 (2011). A reasonable probability is "defined as a showing sufficient to undermine confidence in the outcome, rendering the result unreliable or fundamentally unfair." *People v. Patterson*, 2014 IL 115102, ¶ 81. Because the relevant facts are undisputed, we review *de novo* whether defense counsel provided ineffective assistance. *People v. Stanley*, 397 Ill. App. 3d 598, 612 (2009).

¶ 39    Defendant argues that defense counsel was ineffective because counsel failed to tender a battery instruction. " 'Counsel's decision as to what jury instructions to tender is one of several determinations widely recognized as matters of trial strategy that are generally immune from ineffective assistance claims.' " *People v. Lemke*, 384 Ill. App. 3d 437, 450 (2008) (quoting *People v. Douglas*, 362 Ill. App. 3d 65, 75 (2005)). However, "it should be [the] defendant's decision to

submit an instruction on a lesser charge at the conclusion of the evidence." *People v. Brocksmith*, 162 Ill. 2d 224, 229 (1994).

¶ 40    "[I]n appropriate cases, a defendant is entitled to have the jury instructed concerning less serious offenses that are included in the charged offense." *People v. Landwer*, 166 Ill. 2d 475, 485-86 (1995). In determining whether the jury should have been instructed on battery as a lesser included offense of home invasion, we apply a two-part test. First, we apply the " 'abstract elements' approach," which requires us to examine the statutory elements of the two offenses. *People v. Reveles-Cordova*, 2020 IL 124797, ¶ 13. " 'If all of the elements of one offense are included within a second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second.' " *Id.* (quoting *People v. Miller*, 238 Ill. 2d 161, 166 (2010)). After determining whether one offense is a lesser included offense of another, we "must examine the evidence presented at trial to determine whether a jury could rationally find the defendant guilty of the lesser offense, but acquit on the greater offense." *Landwer*, 166 Ill. 2d at 486.

¶ 41    The parties agree that battery is a lesser included offense of home invasion. See *People v. Bitner*, 89 Ill. App. 3d 1106, 1112 (1980) (battery was a lesser included offense of home invasion because "to cause an injury within the meaning of the home invasion statute, one must cause bodily harm, thus committing a battery"). They disagree about whether, based on the trial evidence, the jury could rationally find defendant guilty of battery and not guilty of home invasion.

¶ 42    On that point, defendant argues that although the State did not need to prove motive (see *People v. Gischer*, 51 Ill. App. 3d 847, 851 (1977) ("Motive is not an element that the State must prove to establish its case.")), "the lack of motive for the battery strongly suggests that [defendant] did not intend to beat *** Underwood when she entered the residence." Defendant asserts that, in

the absence of a motive and given defendant and Underwood's previous friendship and Landon's failure to object when defendant entered the home, "a rational juror could acquit [defendant] of home invasion if the juror was presented with a third option of finding [defendant] guilty of battery." The State replies that, "to have acquitted defendant of home invasion, the jury would have had to have found that [defendant] entered Underwood's home with authority and without the intent to commit a crime at the time of entry." The State asserts that a rational jury could not have found that defendant entered the home with no criminal intent. Thus, a rational jury could not have found defendant guilty of battery but not guilty of home invasion.

¶ 43    We conclude that, if the jury were given a battery instruction, the jury would not have found defendant guilty of battery and acquitted her of home invasion. As addressed previously, the evidence—including the hurried nature of defendant's entrance into Underwood's home, her refusal to wait for Underwood to exit the bathroom before confronting her, and then attacking Underwood upon entering the bathroom—established that defendant's intent for entering the home was to batter Underwood. Because she had that criminal intent when she entered the home, no rational jury could find defendant guilty of battery but not guilty of home invasion. Accordingly, defense counsel cannot be ineffective for failing to tender a battery instruction. See *People v. Phillips*, 383 Ill. App. 3d 521, 544 (2008) (when a rational jury could not have acquitted the defendant of the greater offense and found him guilty of the lesser included offense—thus, the defendant was not entitled to an instruction on the lesser included offense—defense counsel cannot be ineffective for failing to request an instruction on the lesser included offense).

¶ 44    Defendant claims, however, that counsel was ineffective because, despite defendant's wish to tender a battery instruction, defense counsel failed to do so. The record does not support defendant's assertion. Defense counsel informed the trial court that he had prepared lesser

included offense instructions. Counsel also advised the court that he and defendant would discuss whether to tender those lesser included offense instructions. Although no battery instruction was subsequently tendered, we must presume that defendant, not defense counsel, decided not to tender such an instruction, and the record does not rebut that presumption. *People v. Medina*, 221 Ill. 2d 394, 409-10 (2006). The court in *Medina* noted "where, as here, no lesser-included offense instruction is tendered, and a defendant is not exposed to additional criminal liability, *** it may be assumed that the decision not to tender was defendant's, after due consultation with counsel." *Id*. Here, there is no affirmative evidence in the record indicating that, *after* defense counsel discussed the giving of lesser-included-offense instructions with defendant, *defendant* wanted a battery instruction given to the jury, and defense counsel refused to tender the instruction. *Id*.

¶ 45 As evidence of her desire to have the jury instructed on battery, defendant cites her statements during her arraignment and in the PSI report. She claims that her "on-the-record statements before trial and in the PSI indicating that she was responsible for battery but not home invasion suggest that she consented to the giving of the lesser included offense instruction." We disagree. Defendant's exchange with the trial court at her arraignment reflects only that she disagreed with the home-invasion charge, not that she wanted a battery instruction. Moreover, even if defendant expressed a desire early in the case to have a battery instruction, the fact that no such instruction was ultimately tendered does not, for reasons noted above, establish ineffective assistance of trial counsel. *Id.* Additionally, we fail to see how it matters at all that defendant opined to the PSI investigator that she should have been charged with battery and not home invasion. As the court noted in *People v. Whitamore*, 241 Ill. App. 3d 519, 526 (1993), "[d]efendant's hindsighted review of his trial counsel's performance and strategies merely

speculates that some other trial counsel might have done things differently and better. Such speculation cannot support a finding of ineffective assistance of counsel under *Strickland.*"

¶ 46     Additionally, we mention that defense counsel proceeded with an all-or-nothing approach in this case. That is, the defense theory was that defendant was not guilty of any crime. See *Medina*, 221 Ill. 2d at 409 ("Where a lesser-included offense instruction is tendered, a defendant is exposing himself to potential criminal liability, which he otherwise might avoid, and is in essence stipulating that the evidence is such that a jury could rationally convict him of the lesser-included offense."). Courts have "repeatedly recognized that the decision to pursue an all-or-nothing defense is a 'valid trial strategy.' " *People v. Jackson*, 2018 IL App (1st) 150487, ¶ 29 (quoting *People v. Walton*, 378 Ill. App. 3d 580, 589 (2007)). " '[T]he mere fact that an 'all-or-nothing' strategy proved unsuccessful does not mean counsel performed unreasonably and rendered ineffective assistance.' " *Id.* (quoting *People v. Fields*, 2017 IL App (1st) 110311-B, ¶ 28). Rather, "an 'all or nothing' strategy may be unreasonable only if it (1) was 'based upon counsel's misapprehension of the law' [citation] or (2) was the functional equivalent of withdrawing a lesser-included offense instruction." *Id.*

¶ 47     Here, defense counsel cannot be deemed ineffective for taking an all-or-nothing approach. Nothing in the record indicated that counsel misunderstood the law on tendering a battery instruction. Indeed, the record reflects counsel was prepared to tender a battery instruction if defendant wanted one.

¶ 48                               III. CONCLUSION

¶ 49     For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 50     Affirmed.