# Illinois Official Reports

## Supreme Court

---

### *People v. Witherspoon*, 2019 IL 123092

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MARCELUS WITHERSPOON, Appellee. |
| Docket No. | 123092 |
| Filed | January 25, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Macon County, the Hon. Thomas E. Griffith, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Eldad Z. Malamuth, Assistant Attorneys General, of Chicago, of counsel), for the People.<br><br>James E. Chadd, State Appellate Defender, Patricia Mysza, Deputy Defender, and Adrienne N. River, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |

Justices          JUSTICE BURKE delivered the judgment of the court, with opinion.
Chief Justice Karmeier and Justices Thomas, Kilbride, Garman, Theis, and Neville concurred in the judgment and opinion.


## OPINION

¶ 1    In this case, we must determine whether a person who enters the dwelling place of another in violation of a court order thereby enters the dwelling "without authority" under the home invasion statute (720 ILCS 5/19-6(a) (West 2014)). For the following reasons, we conclude that the person does.

¶ 2                              BACKGROUND

¶ 3    In early August 2014, the defendant, Marcelus Witherspoon, was charged in a separate case with domestic battery and criminal trespass to a residence. He was released on bond, with the court ordering as conditions of the bail bond that defendant have no contact with the victim, S.L., and that he refrain from entering or remaining at the victim's residence or going on the premises located at the victim's residence.[1]

¶ 4    Later that same month, in violation of his bail bond conditions, defendant returned to and entered S.L.'s home. While there, according to S.L., defendant battered and sexually assaulted her. As a result of this incident, defendant was charged in the circuit court of Macon County with home invasion (*id.* § 19-6(a)(2)), aggravated criminal sexual assault (*id.* § 11-130(a)(2)), domestic battery (*id.* § 12-3.2(a)(1)), unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2014)), and violation of bail bond (720 ILCS 5/32-10(b) (West 2014)).[2] The matter proceeded to a bench trial.

¶ 5    At trial, S.L. testified that she and defendant began a sexual relationship in October 2013. The relationship became more serious in March 2014 and was an exclusive, dating relationship through July 2014. S.L. stated that, by the end of July, she no longer considered herself to be in a serious relationship with defendant, although she continued to have sex with him. This sexual relationship continued throughout August 2014, even after defendant had been ordered by the circuit court to refrain from having contact with S.L. and to refrain from entering her residence. S.L. testified that, during defendant's visits in August, she would let him into her

---

[1]Illinois law requires that

"[w]hen a person is charged with a criminal offense and the victim is a family or household member as defined in Article 112A [(725 ILCS 5/112A-3(3) (West 2014))], conditions shall be imposed at the time of the defendant's release on bond that restrict the defendant's access to the victim. Unless provided otherwise by the court, the restrictions shall include requirements that the defendant do the following:

        ***

        (2) refrain from entering or remaining at the victim's residence for a minimum period of 72 hours following the defendant's release." 725 ILCS 5/110-10(d)(2) (West 2014).

[2]The State dropped the violation of bail bond charge prior to trial.

home, they would have sex, and defendant would leave. S.L. stated that she knew defendant was not supposed to be in her home at these times.

¶ 6    S.L. testified that on the night of August 28, 2014, at approximately 10 p.m., defendant entered her house. According to S.L, defendant was angry about a Facebook post S.L. had written about another man. Defendant and S.L. argued about the post, and S.L. told defendant to leave. S.L. then went into her bedroom to lie down. Defendant followed her and grabbed S.L.'s house keys, car keys, and cell phone off her dresser. Defendant then left the house, taking S.L.'s car. S.L. locked the front door and went to bed. S.L. stated she "just went and laid back down because I knew eventually [defendant] would just bring my stuff back."

¶ 7    S.L. testified that at approximately 2 a.m. she awoke to find defendant standing over her. He yelled at her about the Facebook post and accused her of cheating on him. S.L. testified that she tried to leave the bedroom but defendant grabbed her by the hair and began punching her in the head, back, and side. Defendant threatened to kill S.L., battered her repeatedly, and then forced her to have sex with him. Eventually, defendant fell asleep. S.L. then got dressed, removed her keys from defendant's pants pocket, and drove to a friend's house where she called the police.

¶ 8    On the issue of whether she had granted defendant permission to enter her home, S.L.'s testimony varied. When asked on direct examination whether defendant had permission to enter the house when he first arrived at 10 p.m., she answered "No." However, on cross-examination, she stated that this first arrival began like previous visits when defendant had entered her home with permission and they had engaged in consensual sex. Regarding defendant's entry into the home at 2 a.m., S.L. again stated that he did not have her permission to do so. However, she also testified that defendant had taken her keys and used her car in the past and that he would "sometimes" simply enter her home when he had her keys with him. She further stated that she was not concerned about defendant taking her car and keys in this instance because she knew he would return them as he had done on previous occasions.

¶ 9    In addition to S.L.'s testimony, the State offered testimony from various police officers. These officers described the arrest of defendant at S.L.'s home, the extent of S.L.'s injuries, and the recovery of cocaine from defendant's clothing at the time of his arrest. The State also introduced into evidence defendant's bail bond, which was signed by defendant and included the conditions that he refrain from having contact with S.L. and entering her residence.

¶ 10    Defendant testified on his own behalf. Like S.L., defendant stated that he and S.L. began a sexual relationship in 2013 and that the relationship became more serious in the spring of 2014. Defendant also stated that he continued to visit and have sex with S.L. even after the bond conditions had been imposed and that he used her car and entered her home with permission throughout most of August 2014. Defendant stated he was fully aware that the circuit court had ordered him not to enter S.L.'s home or have contact with her and that he was violating that order when he visited S.L.

¶ 11    Defendant testified that, on the night of August 28 and early morning of August 29, 2014, he and S.L. got into a physical fight after defendant joked that he had been with another woman. According to defendant, once the fight was over and things had calmed down, the two smoked marijuana and had consensual sex. Defendant conceded that S.L. "had some bruises from the fight" and that he had punched her, but he stated that he only struck S.L. after she first hit him with a lamp.

¶ 12    At the conclusion of trial, the circuit court found defendant not guilty of aggravated criminal sexual assault but guilty of domestic battery and possession of a controlled substance. With respect to the home invasion charge, the court observed that the offense requires the State to prove, among other things, that the defendant entered the victim's residence "without authority" (720 ILCS 5/19-6(a) (West 2014)). The court concluded that the State had failed to prove S.L. denied authority to defendant to enter her home in the early hours of August 29 based on S.L.'s acceptance of defendant's practice of using and then returning her car and keys. The circuit court stated:

> "When it comes down to the fact that he simply did not have the authority to enter the residence, by the alleged victim's own testimony she said, well, he took the keys, and he took the car and I didn't worry about it because I knew he was going to be back. So by her own testimony he had authority to enter the residence."

¶ 13    The court also declined to apply the limited authority doctrine. This doctrine provides that a defendant's entry into a dwelling is unauthorized, even when initially consented to by the occupant, if at the time of entry the defendant had an intent to commit criminal acts within the dwelling. *People v. Bush*, 157 Ill. 2d 248, 257 (1993). The circuit court stated it was

> "not convinced that there is proof beyond a reasonable doubt that the defendant entered that residence with the intent to batter her. When you are looking at that issue it comes down to the alleged victim's word versus the defendant's word, and in terms of how that occurred I simply can't say with any degree of certainty."

¶ 14    Having reached these conclusions, the court noted that there still remained a question as to whether the State could establish that defendant entered S.L's residence "without authority" based on the conditions set forth in defendant's bail bond. The circuit court explained:

> "The defendant knew that there was a bail bond in place where he knew he was not to be at that residence. So when he entered that residence he knew he was violating that bail bond. That in and of itself is without authority. If it is, then he is guilty of home invasion. If it is not, then he is not guilty of home invasion. I don't know the answer to that question at this point."

¶ 15    The court ordered additional briefing and argument from the parties and, thereafter, concluded that the conditions of defendant's bail bond did deprive him of any authority to enter S.L.'s residence. Because defendant did not challenge any other aspect of the home invasion charge, the circuit court found defendant guilty of that offense. The court merged the domestic battery conviction into the home invasion conviction and sentenced defendant to concurrent terms of 14 years' imprisonment for home invasion and 3 years' imprisonment for unlawful possession of a controlled substance.

¶ 16    On appeal, the appellate court reversed defendant's conviction for home invasion. 2017 IL App (4th) 150512. In so doing, the appellate court did not frame the issue before it as whether the legislature, in using the phrase "without authority" in the home invasion statute, meant to include a violation of a court order prohibiting the defendant from going into the victim's residence. Instead, the appellate court stated that "the issue in this case is whether the consent of the resident of a dwelling place for a person to enter trumps—for purposes of the home invasion statute—a court order that prohibited that person from entering that dwelling place." *Id.* ¶ 27. The appellate court concluded that the consent of the resident was controlling. The court reasoned:

"People are sovereign in their homes, and the law should be loath to attempt to regulate whom homeowners may permit to enter. This remains true even though a court order exists directing some person to stay away from that residence and to not enter it. The homeowner may simply change her mind or otherwise decide that—for whatever reason—she wishes to admit into her home a person who is otherwise under a court order not to enter. Her decision may be unwise, but it is one that the law must respect, particularly regarding a situation, like this case, where a person charged with a Class X offense may have relied upon that consent." *Id.* ¶ 29.

¶ 17 The appellate court determined that, because S.L. had consented to defendant's entry into her home and because that consent was controlling, the State had failed to prove defendant guilty of home invasion. *Id.* ¶¶ 33-37. The appellate court remanded the cause to the circuit court for sentencing on defendant's conviction for domestic battery. *Id.* ¶ 39.

¶ 18 We granted the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Nov. 1, 2017).

¶ 19                                   ANALYSIS

¶ 20 The home invasion statute states, in relevant part, that a person commits home invasion when "without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present *** and *** [i]ntentionally causes any injury *** to any person or persons within the dwelling place." 720 ILCS 5/19-6(a)(2) (West 2014). Before this court, defendant contends that the circuit court erred in finding him guilty of home invasion because the State failed to prove he entered S.L.'s home "without authority." To address this argument we must first determine the meaning of the phrase "without authority." This presents an issue of statutory construction, which we consider *de novo*. *Corbett v. County of Lake*, 2017 IL 121536, ¶ 18.

¶ 21 The home invasion statute does not contain a definition of the word "authority." When a statutory term is undefined we assume the legislature intended the word to have its ordinary and popularly understood meaning and that we may ascertain this meaning through the use of contemporary dictionaries. *People v. Beacham*, 229 Ill. 2d 237, 244-45 (2008). At the time the home invasion statute was enacted, to have "authority" meant, as it does today, to have "freedom granted by one in authority." Webster's Third New International Dictionary 146 (1977). Thus, when the home invasion statute states that a person must enter the dwelling place of another "without authority" in order to be guilty of the offense, the statute is necessarily saying that someone must deny that person the freedom to enter. This raises the question: For purposes of the home invasion statute, who may deny the person authority to enter the dwelling place?

¶ 22 Defendant does not dispute that a court may, when appropriate, order a person to refrain from entering or remaining at a certain residence. See, *e.g.*, 725 ILCS 5/110-10(d)(2) (West 2014) (conditions of bond); 750 ILCS 60/214(b)(2) (West 2014) (orders of protection). Nor does he dispute that he was prohibited by the court-ordered conditions of his bail bond from entering into S.L.'s home and that he violated those conditions in the early morning hours of August 29. However, defendant contends that his violation of the court order is "irrelevant to the issue of his guilt of home invasion."

¶ 23 According to defendant, "[i]t is the consent of the resident that must determine if one enters 'without authority.' " In other words, defendant reads the phrase "without authority" in the

home invasion statute to mean "without authority granted by an occupant of the dwelling." Read this way, a court order plays no role in determining whether a person has entered the dwelling place of another "without authority." Rather, the inquiry focuses entirely on the actions taken by the occupant of the dwelling, and a person can only be said to have entered a dwelling "without authority" if the occupant has denied consent to enter. Defendant notes that, in this case, the circuit court held that the State failed to prove S.L. denied authority to defendant to enter her home. Therefore, according to defendant, while he remains guilty of domestic battery, he is not guilty of home invasion. We disagree.

¶ 24    The difficulty with defendant's argument is that the home invasion statute is not limited in the way he proposes. We may not depart from the plain language of a statute by reading into it "exceptions, limitations, or conditions that the legislature did not express." *People v. Shinaul*, 2017 IL 120162, ¶ 17. Accepting defendant's argument would require us to do just that. The occupant of a dwelling may always deny authority to others to enter his or her home. But nothing in the plain language of the home invasion statute limits the phrase "without authority" solely to those situations where authority to enter is denied by the occupant.

¶ 25    Moreover, defendant's reading of the phrase "without authority" is at odds with the purpose of the home invasion statute. The home invasion statute is intended "to protect the safety of persons in their homes." *People v. Hicks*, 181 Ill. 2d 541, 549 (1998). When a court orders a defendant to refrain from entering or remaining at a residence, as was done in this case, this means there has been a judicial determination that the defendant poses a risk to the safety of his victims. See also, *e.g.*, *People v. Gray*, 2017 IL 120958, ¶ 65 (noting that a defendant who has access to a victim of domestic violence is often able to "intimidate and control the victim"). These individuals are the ones who most clearly are in need of deterrence and who most clearly should be kept out of the victims' homes. Defendant's interpretation of the phrase "without authority" would presumptively exclude these individuals from the reach of the home invasion statute and, in our view, cannot be squared with the legislative purpose of protecting people in their homes. Accordingly, because the legislature did not include any limiting language in the home invasion statute and in order to remain consistent with the statute's purpose, we hold that a defendant enters the dwelling place of another "without authority" when either the occupant has not granted consent to enter or a court order has prohibited entry.

¶ 26    The appellate court, in reversing defendant's conviction for home invasion, did not provide an analysis or definition of the phrase "without authority." Instead, the court concluded that an occupant's consent to a defendant's entry "trumped" any court order and, therefore, the only question that need be decided regarding the "without authority" element is whether the occupant did, in fact, consent to the defendant's entry. 2017 IL App (4th) 150512, ¶¶ 27-37. We reject this reasoning. The phrase "without authority" means either a violation of a court order or a denial of consent to entry from the occupant. When a defendant's prosecution for home invasion is premised on the violation of a court order, the consent of the occupant is legally irrelevant. The occupant's consent to a defendant's entry does not, in some sense, trump the court order.

¶ 27    Defendant also contends that, even if the phrase "without authority" includes the violation of a court order, his conviction for home invasion should nevertheless be reversed because the State failed to prove that he knew he lacked authority to enter S.L.'s home. Defendant maintains that the "legal issue" regarding the meaning of "without authority" was not settled

at the time he entered S.L.'s home and, therefore, it cannot be said that he knowingly violated the law.

¶ 28　　In response, the State points out that, while the home invasion statute explicitly requires proof that the defendant "knowingly" entered the dwelling place of another (720 ILCS 5/19-6(a) (West 2014)), it does not mention a mental state requirement for the "without authority" element. Therefore, according to the State, the home invasion statute does not require proof that the defendant knew he acted without authority. We disagree.

¶ 29　　Section 4-3(b) of the Criminal Code of 2012 (Code) states that, if a "statute does not prescribe a particular mental state applicable to an element of an offense (other than an offense which involves absolute liability), any mental state defined in Sections 4-4 [(intent)], 4-5 [(knowledge)] or 4-6 [(recklessness)] is applicable." *Id.* § 4-3(b). Section 4-9 of the Code, in turn, addresses absolute liability offenses and states that a person may be guilty of a criminal offense without proof of a mental state for each of the elements thereof "if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $1,000, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." *Id.* § 4-9.

¶ 30　　This court has observed that, through section 4-9, the legislature has expressed an intent to limit the scope of absolute liability and, therefore, a court should not interpret a nonmisdemeanor statute as creating an absolute liability offense unless there is a clear indication of a legislative purpose to impose absolute liability. *People v. Gean*, 143 Ill. 2d 281, 285-86 (1991). Consequently, the " 'mere absence of express language describing a mental state does not *per se* lead to the conclusion that none is required.' " *Id.* at 286 (quoting *People v. Valley Steel Products Co.*, 71 Ill. 2d 408, 424 (1978)). Further, "if at all possible, the court will infer the existence of a culpable mental state, even where the statute itself appears to impose absolute liability." *People v. O'Brien*, 197 Ill. 2d 88, 92 (2001).

¶ 31　　In this case, we conclude that the "without authority" element must include the mental state of knowledge. Both the criminal offense of violation of bail bond (720 ILCS 5/32-10(b) (West 2014)) and the criminal offense of violation of a protective order (750 ILCS 60/223(a)(1), (d) (West 2014)) require proof of a knowing violation before criminal liability may be imposed. See also, *e.g.*, *People v. Hinton*, 402 Ill. App. 3d 181 (2010). If we were to hold that the "without authority" element of the home invasion statute does not include a knowledge requirement, we would create an anomalous situation whereby a defendant could be found guilty of home invasion for having violated the conditions of a bail bond or a protective order, even though he could not be found guilty of a bail bond or protective order violation itself. We do not think the legislature could reasonably have intended such a result.

¶ 32　　However, although we agree with defendant that the State was required to prove defendant knowingly entered S.L.'s home without authority, we reject defendant's contention that knowledge was not proven here. Defendant contends that the State failed to prove he knowingly entered S.L.'s home without authority because the "legal issue" regarding the meaning of "without authority" was not settled at that time. In other words, defendant asserts that the State failed to meet its burden of proof because he did not know the meaning of the law. We disagree.

¶ 33　　"Knowledge generally refers to an awareness of the existence of the facts which make an individual's conduct unlawful" (*People v. Sevilla*, 132 Ill. 2d 113, 125 (1989)), not to

knowledge of the law (*People v. Izzo*, 195 Ill. 2d 109, 115 (2001) ("ignorance of the law does not excuse unlawful conduct"); 720 ILCS 5/4-3(c) (West 2014) ("Knowledge that certain conduct constitutes an offense, or knowledge of the existence, meaning, or application of the statute defining an offense, is not an element of the offense unless the statute clearly defines it as such.")). Under the home invasion statute, the State is required to prove the defendant had knowledge of the court order prohibiting him from entering the victim's home, not that he understood the law. In this case, defendant testified that he knew the circuit court had ordered him not to enter S.L.'s home and that he violated that order on August 29. Therefore, the State met its burden of proving beyond a reasonable doubt that defendant knew he entered S.L.'s home without authority. Consequently, the circuit court properly found defendant guilty of home invasion.

¶ 34                                         CONCLUSION

¶ 35        For the foregoing reasons, the judgment of the appellate court is reversed. The judgment of the circuit court is affirmed.

¶ 36        Appellate court judgment reversed.

¶ 37        Circuit court judgment affirmed.