**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (3d) 170522-U

Order filed November 6, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, McDonough County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0522 Circuit No. 16-CF-319 |
| | ) | |
| CHRISTOPHER K. KITCH, | ) ) | Honorable Heidi A. Benson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Justices Holdridge and McDade concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*: (1) The circuit court did not err in admitting evidence of defendant's prior sex offenses. (2) The evidence was sufficient to prove defendant's guilt of predatory criminal sexual assault of a child and aggravated criminal sexual abuse beyond a reasonable doubt. (3) The term "contact" as used in section 11-1.40 of the Criminal Code of 2012 is not unconstitutionally vague as applied to defendant.

¶ 2      Defendant, Christopher K. Kitch, appeals from his conviction for predatory criminal sexual assault of a child and aggravated criminal sexual abuse. Defendant argues: (1) the court erred in allowing the State to present evidence of his prior offenses, (2) the State failed to prove his guilt

of the charged offenses beyond a reasonable doubt, and (3) the predatory criminal sexual assault of a child statute is unconstitutionally vague as applied to him. We affirm.

¶ 3                                         I. BACKGROUND

¶ 4         On December 6, 2016, the State charged defendant with two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2016)), and two counts of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)). Count I alleged that defendant, being a person 17 years of age or older, knowingly placed his finger on the vagina of J.M., who was under 13 years of age, for the purpose of sexual gratification. Count II alleged that defendant, being a person 17 years of age or older, knowingly placed his finger on the vagina of B.M., who was under 13 years of age, for the purpose of sexual gratification. Count III alleged that defendant, being a person 17 years of age or older, knowingly touched the vagina of the minor J.M. with his finger through her clothing for the purpose of sexual gratification. Count IV alleged that defendant, being a person 17 years of age or older, knowingly touched the vagina of the minor B.M. with his finger through her clothing for the purpose of sexual gratification.

¶ 5         On February 24, 2017, the State filed two motions *in limine* to admit evidence of defendant's prior criminal convictions. The first motion sought to admit defendant's two prior felony convictions as impeachment evidence under Illinois Rule of Evidence 609 (eff. Jan. 6, 2015). The second motion sought to admit the evidence of defendant's prior convictions under section 115-7.3 of the Code of Criminal Procedure of 1963 (Code). 725 ILCS 5/115-7.3 (West 2016).

¶ 6         In Hancock County case No. 03-CF-87, defendant was convicted of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1)(i) (West 2002)). In that case, defendant placed his penis in the mouth and anus of D.T., who was six years old, while they were in a vehicle. D.T. told

defendant "no," but he persisted. In a police interview, defendant admitted to having sexual thoughts about children. This led defendant to expose his penis to D.T. Defendant let D.T. touch his penis and he rubbed D.T.'s inner thighs over her clothes before he exposed his penis. At the time, defendant had a sexual relationship with D.T.'s mother. D.T. said that defendant consumed six to seven beers on the night of the incident. Following the entry of defendant's guilty plea, the court sentenced defendant to seven years' imprisonment.

¶ 7        In McDonough County case No. 03-CF-65, defendant was convicted of aggravated criminal sexual abuse (*id.*). Following D.T.'s report of defendant's sexual abuse, her sister, S.T., who was seven years old, told her mother, Shelley Jackson, that defendant had touched her vagina several times. Once, while defendant was putting S.T. and D.T. to bed, defendant touched S.T.'s vagina on top of her clothing. Defendant had also touched S.T.'s vagina in the living room of the house. S.T. said that the sexual abuse mostly occurred at night. Defendant admitted to the police that he had touched S.T.'s inner thigh while she was sitting on his lap on the couch at Jackson's house. Defendant also admitted that he rubbed S.T.'s vagina over the top of her pants. Defendant said that rubbing S.T.'s vagina "excited" him. Defendant said that these incidents occurred during the evening while Jackson was in the house. Following the entry of defendant's guilty plea, the court sentenced defendant to six years' imprisonment. The court ordered the sentence to run concurrent to the sentence imposed in Hancock County case No. 03-CF-87. Defendant was released from prison on March 17, 2010.

¶ 8        After hearing the parties' arguments, the court found that both convictions were close in time and sufficiently similar to the charged offenses to be probative of defendant's propensity to commit the instant offenses. The court granted the State's motion, and the cause proceeded to a bench trial.

3

¶ 9      McDonough County sheriff's deputy Cody Lovell testified that he was dispatched to 201 North Reed Avenue, in Industry at 1:35 p.m., on November 11, 2016, in response to a sexual assault report. Elizabeth M. reported that defendant came to her house on the evening of November 10, drank a 12-pack of beer, and fell asleep on the couch. Elizabeth and her daughters, J.M., who was then 12 years old; and B.M., who was then 7 years old; also slept on the couch. Elizabeth slept on the end of the couch with B.M. next to her. Defendant was located on the other side of B.M., and J.M. was on the other side of defendant. Elizabeth fell asleep around 2 a.m.

¶ 10      After speaking with Elizabeth, Lovell spoke to B.M. and J.M. privately. J.M. told Lovell that defendant had touched her buttocks. B.M. told Lovell that defendant had touched her "bad spot."

¶ 11      Defendant told Lovell that on November 10, 2016, he visited Michelle L. Michelle was Elizabeth's niece and she lived in Elizabeth's house. When defendant arrived, he, Michelle, Elizabeth, B.M. and J.M. talked and watched a movie. Defendant drank alcohol while he conversed, and he "pass[ed] out on the couch due to consuming alcohol." When defendant regained consciousness, he and Michelle had sexual intercourse in a bedroom. B.M. walked into the bedroom while defendant and Michelle were having sexual intercourse. Defendant immediately covered himself. Defendant denied having any inappropriate contact with B.M. and J.M.

¶ 12      Detective Justin Lundgren testified that he interviewed Elizabeth, and he observed the Child Advocacy Center (CAC) interviews of B.M. and J.M. From the interviews, Lundgren determined that the incidents occurred while Elizabeth was asleep on one end of a couch and B.M. and J.M. were sleeping next to defendant. Lundgren thought that everyone had started to fall asleep around 8 or 9 p.m. Lundgren was unaware that Elizabeth had told Lovell that she went to

4

sleep after 2 a.m. Lundgren observed "[t]he children [were] very steadfast. It was easy to gain a time line from their series of events, whether it being [defendant] getting up naked from the couch and that type of thing."

¶ 13    Brooke Baldwin testified that she conducted the CAC interviews with J.M. and B.M. Baldwin asked J.M. to identify where defendant had touched her, and J.M. circled the vagina on an anatomical diagram. J.M. indicated to Baldwin that she called this area her "bad spot." B.M. also circled the vagina of anatomical diagram and indicated that this is where defendant had touched her.

¶ 14    Michelle testified that she lived in the same home as Elizabeth, J.M., and B.M. Michelle's son, D.L., and two other cousins also lived in this house. In November 2016, Michelle considered defendant to be a friend, and they had a sexual relationship. Michelle was unaware that defendant was a registered sex offender and had two prior felony convictions. Defendant visited the house a couple of times per week and occasionally spent the night. During his visits, defendant played with J.M. and B.M. and conversed with the other residents. Occasionally, defendant spent the night.

¶ 15    On November 10, 2016, between 8 and 10 p.m., defendant stopped by the house. Defendant drank a pack of beer and fell asleep on the couch around 1 a.m. At the time, he was wearing jeans, a pair of boots, and a T-shirt. One or two hours later, Michelle went to sleep in her bedroom. In the early morning, Michelle got up to use the bathroom. Defendant met her in the doorway, and after Michelle used the bathroom, defendant directed her to the bedroom. There, defendant and Michelle had sexual intercourse. Unlike the prior two instances in which Michelle and defendant had sexual intercourse, defendant ejaculated. Around 8 or 9 a.m., defendant got up and was in a hurry to leave. Elizabeth, J.M., and B.M. woke up around 9:30 a.m. J.M. and B.M.

5

told Elizabeth that defendant had touched their vaginas, and someone contacted the police. The police arrived approximately 4½ hours later. In the time between J.M. and B.M.'s allegations and the arrival of the police, everyone in the house gathered and discussed the incidents. J.M. said that defendant put his hand inside her pants and touched her "bad spot." B.M. said that defendant had placed his hand on the outside of her pants and touched her "bad spot." Defendant's penis was exposed while he touched B.M. B.M. kicked defendant in the face.

¶ 16    Elizabeth testified that she lived at 201 North Reed Avenue, and J.M. and B.M. were her daughters. Elizabeth noted that J.M. had attention deficient hyperactivity disorder and other special needs that required medication and assistance at school.

¶ 17    Elizabeth considered defendant to be a friend and he visited her house almost every weekend. Elizabeth was unaware of defendant's criminal history and that he was a registered sex offender. When defendant visited, he would often play with J.M. and B.M. Defendant's visits occurred in the evening, and he always drank beer during the visits.

¶ 18    On November 10, 2016, Elizabeth was at home with J.M., B.M., Michelle, and D.L. Defendant came to the house between 7 and 8 p.m. Defendant brought a six-pack of beer and consumed the beer throughout the night. Later, Elizabeth, J.M., and B.M. went to sleep on the couch. Elizabeth slept on the recliner section of the couch, B.M. slept next to Elizabeth, and J.M. slept on the other side of B.M. J.M. and B.M. fell asleep around 2 a.m. Elizabeth "didn't think [defendant] was asleep. [She] thought he was passed out." At the time, defendant was wearing pants, a shirt, and boots. On the prior occasion that defendant stayed overnight, defendant slept in Michelle's bedroom.

¶ 19    Elizabeth said that she suffered from several medical conditions that required her to take medications that caused drowsiness. Elizabeth considered herself to be a "pretty heavy sleeper"

6

and "hard to wake up." On November 11, Elizabeth awoke around 9 or 10 a.m. Defendant left the house after Elizabeth woke up. After getting up, B.M. told Elizabeth that defendant "had touched her bad spot on the outside of her pants." B.M. also said that defendant "had his bad spot out" and was "playing with it." B.M. referred to her vagina as her "bad spot," and called defendant's penis his "bad spot." B.M. said that defendant had tried to pull down her pants, and she told defendant to stop. J.M. told Elizabeth that defendant had "touched her butt." J.M. referred to her vagina as "her butt." After hearing the allegations, Elizabeth called the police. Elizabeth said the family did not have a meeting before the police arrived.

¶ 20    J.M. testified that she was 12 years old. During one of defendant's visits to her house, defendant touched her "private" inside her underwear. This incident occurred at night while J.M. was trying to sleep on the couch. At the time, Elizabeth and B.M. were also on the couch, and J.M.'s brother, Jo.M., was in the room, Michelle was sitting in a nearby chair, and D.L. was asleep on the floor. When defendant touched J.M.'s vagina, J.M. told defendant to stop. J.M. then saw defendant touch B.M., who was lying next to defendant. B.M. kicked defendant in the face. Defendant then went to Michelle's bedroom. J.M. fell back asleep when defendant left the house. J.M. told Elizabeth about the incident after B.M. woke Elizabeth up.

¶ 21    J.M.'s statements during the CAC interview mirror her testimony. The video recording of the CAC interview shows J.M. tell Baldwin that she is 12 years old and lives with her mother, Elizabeth; dad, Scott; brother, Jo.M.; sister, B.M.; D.L. and Michelle. J.M. says that defendant touched her and her sister "down here" and gestures toward her lower abdomen. J.M. calls this area her "bad spot." At the time of the incident, Elizabeth was sleeping in a recliner that was attached to the couch. The touching occurred at night, and after defendant touched J.M., he

7

touched B.M. B.M. kicked defendant, and defendant went to a bedroom. When Elizabeth awoke, J.M. told her about defendant's actions, and Elizabeth called the police.

¶ 22    B.M. testified that she was seven years old. One Saturday or Sunday morning, when defendant had spent the night at B.M.'s house, defendant touched B.M.'s "bad spot and [her] behind." Defendant tried to reach his hand into B.M.'s pants but stopped when B.M. hit him. B.M. told defendant to stop touching her but he continued to touch her vagina. Defendant stopped when B.M. kicked him. Defendant also "had his bad spot out of his pants," and he made B.M. touch it. After B.M. kicked defendant, he went to Michelle's bedroom. At the time of the incident, B.M. was sleeping on the couch with J.M. and Elizabeth. Jo.M. was sleeping on the floor nearby. After the incident, B.M. went to tell Michelle, and she saw defendant lying naked in bed with Michelle. Defendant covered his face with a blanket. Defendant left the house shortly before Elizabeth awoke.

¶ 23    Like her trial testimony, in the recording of the CAC interview, B.M. tells Baldwin that defendant touched her "bad spot" while she was sleeping, and defendant had his "bad spot out and he was playing with it." B.M. said that defendant was not wearing pants and only had on his underwear. B.M. slapped defendant in his face. Defendant touched B.M. a second time and tried to push B.M.'s pants down. B.M. kicked defendant in the face. Defendant then got off the couch and went to a bedroom. B.M. walked into the bedroom and noticed that defendant was naked. B.M. identifies the vagina as the area she refers to as her "bad spot" on a female anatomical diagram. B.M. identifies the penis as the area she refers to as the "bad spot" on a male anatomical diagram. At the time of the incident, defendant was lying between J.M. and B.M. on the couch. Elizabeth was also sleeping on the couch.

¶ 24     Shelly Jackson testified that she met defendant in 2003. At that time, defendant would visit her house approximately two to three times per week. Defendant usually arrived in the evening, and he and Jackson would drink a 6 or 12-pack of beer and watch movies. At the time, Jackson lived with her two daughters, S.T. and D.T.

¶ 25     One Sunday night, when D.T. was six years old, defendant took D.T. with him to purchase beer. When defendant and D.T. were gone longer than Jackson expected, she became concerned and went looking for them. Jackson returned to find defendant and D.T. in her home. Jackson yelled at defendant, and defendant left the house. After Jackson calmed down, she told D.T. and S.T. that defendant likely would not be coming over anymore. D.T. said that she did not want defendant to come over because defendant had "hurt her." Following D.T.'s statement, seven-year-old S.T. told Jackson that defendant had sexually abused her as well. Jackson called the police, and defendant was arrested later in the day.

¶ 26     S.T. testified that she first met defendant when she was seven years old. At the time, Jackson was dating defendant. S.T. recalled that during the period that Jackson and defendant dated, defendant stayed overnight at their house every day. During the visits, defendant would drink alcohol, converse, and watch movies. S.T. said that during several of defendant's visits, defendant touched her vagina with his hand. These incidents occurred at night in the bedroom or living room. S.T. recounted one incident where defendant placed his hand on her vagina while she sat on his lap and Jackson and D.T. sat nearby. On other occasions, defendant touched S.T.'s vagina over her clothing while he was laying her down to sleep.

¶ 27     John Swearingen testified that he was a McDonough County sheriff's deputy from 1995 to 2013. On May 21, 2003, Swearingen investigated a case of alleged sexual abuse committed by defendant. During an interview, defendant told Swearingen that he took D.T. with him when he

9

went to purchase beer. While in the vehicle, defendant "rubbed the inner thighs of [D.T.'s] legs and he got sexually excited and he exposed his penis to [D.T.] and allowed her to touch his penis." A few weeks before this incident, S.T. sat on defendant's lap while he was sitting on the couch at Jackson's house. Defendant rubbed S.T.'s inner thighs, and S.T. "took his hand and moved it onto her crotch and that he rubbed her crotch for 10 or 15 seconds and then he stopped. Then he returned his hand, and he said he rubbed a second time for another 10 or 15 seconds." S.T. told defendant that she liked the contact, but defendant thought that she had lied because she avoided him after the incident. Defendant also said that he "sometimes" had sexual thoughts about children.

¶ 28    The court found that J.M. and B.M. disclosed the abuse almost immediately, and they had no motivation to lie. The court noted that although the timeline was "very confusing" and "sometimes contradictory," the children corroborated each other's account of the sexual abuse. Additionally, the instant offenses were "eerily similar" to the facts of defendant's prior convictions where defendant sexually abused S.T. on a couch while another child and adult were present. The court found defendant guilty of count I, predatory criminal sexual assault of a child, and count IV, aggravated criminal sexual abuse. The court sentenced defendant to 30 years' imprisonment for predatory criminal sexual assault of a child and a consecutive term of 10 years' imprisonment for aggravated criminal sexual abuse.

¶ 29                                    II. ANALYSIS

¶ 30                              A. Prior Offenses Evidence

¶ 31    Defendant argues the court abused its discretion when it granted the State's motion to admit evidence of his prior offenses because this evidence was more prejudicial than probative. We find that the court did not err as defendant's prior convictions were sufficiently similar and recent in

time to the charged offenses as to be more probative of defendant's propensity to commit like offenses than prejudicial.

¶ 32        Generally, courts prohibit the admission of evidence of a defendant's prior offenses because it possesses "too much" probative value and could cause the jury to convict defendant solely because he is perceived as a bad person deserving punishment. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003).    However, other-crimes evidence is admissible to prove intent, *modus operandi*, identity, motive, absence of mistake, and any material fact other than propensity that is relevant to the case as long as the probative value of this evidence substantially outweighs it prejudicial effect. *Id.*; Ill. R. Evid. 404(b) (eff. Jan. 1, 2011).  Section 115-7.3 of the Code further expands the evidentiary uses of a defendant's prior convictions.  725 ILCS 5/115-7.3 (West 2016). This section "enable[s] courts to admit evidence of other crimes to show defendant's propensity to commit sex offenses if the requirements of [the section] are met." *Donoho*, 204 Ill. 2d at 176. Evidence of defendant's prior aggravated criminal sexual abuse convictions is admissible to show his propensity to commit like offenses so long as the probative value of this evidence outweighs its prejudicial effect.  725 ILCS 5/115-7.3(b) (West 2016).  Subsection 115-7.3(c) directs:

> "(c) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:
>
> (1) the proximity in time to the charged or predicate offense;
>
> (2) the degree of factual similarity to the charged or predicate offense; or
>
> (3) other relevant facts and circumstances." *Id.* § 115-7.3(c).

¶ 33        We review the court's decision to admit evidence of defendant's prior offenses for an abuse of discretion. *Donoho*, 204 Ill. 2d at 182.  "We will find an abuse of discretion if the trial court's

11

evaluation is ' "arbitrary, fanciful or unreasonable" ' or ' "where no reasonable man would take the view adopted by the trial court." ' " *Id.* (quoting *People v. M.D.*, 101 Ill. 2d 73, 90 (1984) (Simon, J., dissenting), quoting *Peek v. United States*, 321 F.2d 934, 942 (9th Cir. 1963)).

¶ 34      To weigh the probative value of defendant's prior offenses against their prejudicial effect, we first consider the amount of time between the prior offenses and the present crimes. 725 ILCS 5/115-7.3(c)(1) (West 2016). At the outset, we note that subsection (c)(1) does not provide a "bright-line rule about when prior convictions are *per se* too old to be admitted." *Donoho*, 204 Ill. 2d at 184. The passage of 12 to 15 years since the prior offense may lessen its probative value, but it does not by itself compel a finding that the circuit court abused its discretion by admitting evidence of it. *Id.* Defendant's prior offenses occurred in 2003—13 years before the instant offenses. Defendant spent nearly seven years of this period incarcerated. Defendant's incarceration made it practically impossible for him to commit similar sex offenses. Therefore, defendant's prior offenses are probative of his likelihood to reoffend as he had only been released from prison for approximately six years when he committed the present offenses.

¶ 35      We next consider the degree of factual similarity between the charged offenses and defendant's prior convictions. 725 ILCS 5/115-7.3(c)(2), (c)(3) (West 2016). In case Nos. 03-CF-65 and 03-CF-87, the victims were between the ages of six and seven, and thus close to the age of J.M. and the same age as B.M. Additionally, both sets of offenses occurred while defendant was in a relationship with an individual who both resided in the home with the minors and was related to the minors. This fact provided defendant with access to the minor children and opportunities to spend nighttime hours with the minors. Defendant's prior offenses and the present charges also share a similar pattern of behavior. In both cases, defendant consumed alcohol in the evening before he touched the vaginas of the victims. In both cases, this sexual contact occurred

12

at least once in the living room during the nighttime or early morning hours while other individuals were present. Finally, both D.T. and B.M. said that defendant exposed his penis while he touched them. These factual similarities establish a consistent pattern of behavior that makes defendant's prior convictions highly probative of his propensity to commit similar sex offenses.

¶ 36    Defendant argues the other-offenses evidence should not have been admitted because he presented a defense that the charged events never happened (see *People v. Cardamone*, 381 Ill. App. 3d 462, 496 (2008)), and the factual similarities between the prior and present offenses were too common to be probative (see *People v. Wassell*, 321 Ill. App. 3d 1013, 1017-18 (2001)). After reviewing *Cardamone* and *Wassell*, we are unpersuaded by defendant's argument.

¶ 37    In *Cardamone*, 381 Ill. App. 3d at 497, the Second District found that the circuit court abused its discretion when it admitted evidence of 158 to 257 incidents of uncharged illicit sexual conduct committed by the defendant to prove his intent. In its analysis, the court compared the case to *People v. Wilson*, 214 Ill. 2d 127 (2005), noting

> "In *Wilson*, where the other-crimes evidence was upheld as admissible, the key factor in the court's analysis was the defendant's attempt to put an innocent construction on his actions. Here, however, defendant argued that the alleged events never happened." *Cardamone*, 381 Ill. App. 3d at 496-97.

This comparison did not end its inquiry as the Second District further stated "[m]oreover, *the magnitude of evidence* admitted in *Wilson*, even including the complainants' testimony regarding uncharged touching, was far less than that admitted here." (Emphasis added.) *Id.* at 497. Ultimately, the Second District held that "the volume of the other-crimes evidence was overwhelming and undoubtedly more prejudicial than probative." *Id.*

13

¶ 38    While the defendant in *Cardamone* and the instant defendant both relied on the defense that the sex offenses did not occur, this does not render evidence of a defendant's prior offenses inadmissible. Rather, as found by the Second District in *Cardamone*, the determinative factor is the amount of other-offenses evidence. *Id.* This factor is not implicated by the present case as the State introduced evidence of defendant's commission of a few prior acts of sexual misconduct and two prior convictions for aggravated criminal sexual abuse. Thus, *Cardamone*, does not alter our decision.

¶ 39    In *Wassell*, 321 Ill. App. 3d at 1015-16, the Fourth District affirmed the circuit court order that denied the State leave to admit evidence of defendant's prior acts of sexual assault in a prosecution for predatory criminal sexual assault of a child. The State had argued on appeal that this evidence was admissible to establish *modus operandi*. *Id.* at 1016. The State contended that defendant's prior acts of sexual assault were sufficiently similar to the charged offenses because: (1) the victims were all significantly younger than defendant when the assaults occurred, (2) defendant had close relationships with the victims, and (3) all of the assaults involved vaginal contact and penetration. *Id.* at 1017. The Fourth District found that these similarities were "common to most, if not all, charges of predatory criminal sexual assault" and the age difference and penetration similarities were elements of the offense. *Id.* The Fourth District concluded that these general similarities and the nearly 25-year lapse between defendant's prior acts and the charged offenses supported the circuit court's ruling in favor of defendant. *Id.*

¶ 40    Unlike *Wassell*, the record in the instant case includes more than general similarities between the charged offenses and defendant's prior felony convictions. Unique to both set of offenses were the facts that defendant had a relationship with a relative of the victims, defendant consumed alcohol before committing the offenses, and the offenses often occurred when other

14

individuals were in the room or seated nearby. Moreover, defendant's prior offenses were relatively recent compared to the 25-year span in *Wassell*. Accordingly, *Wassell* does not control our decision of this issue.

¶ 41     We conclude that the evidence of defendant's prior sex offenses is far more probative than prejudicial. Therefore, the circuit court did not abuse its discretion in granting the State's motion *in limine* to admit evidence of defendant's prior felony convictions under section 115-7.3 of the Code.

¶ 42                                   B. Sufficiency of the Evidence

¶ 43     Defendant argues that the State failed to prove his guilt of predatory criminal sexual assault of a child and aggravated criminal sexual abuse beyond a reasonable doubt. Defendant contends: (1) the State presented no evidence of sexual arousal needed to establish the predatory criminal sexual assault of a child charge, (2) J.M.'s testimony was not credible because J.M. has mental limitations and is "highly susceptible to believing information that was being fed to her," and (3) B.M.'s testimony was not credible because she is a "fanciful story teller" and her testimony was contradicted by the statements of other witnesses. After reviewing the record, we find the evidence to be sufficient for the fact finder to infer that defendant intended to touch J.M.'s vagina for the purpose of sexual gratification or arousal, and J.M. and B.M. provided credible testimony.

¶ 44     In a challenge to the sufficiency of the evidence, "we must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *People v. Collins*, 214 Ill. 2d 206, 217 (2005). We will reverse a criminal conviction where the evidence is so unreasonable, improbable or unsatisfactory that it creates a

15

reasonable doubt of defendant's guilt. *People v. Rowell*, 229 Ill. 2d 82, 98 (2008). "It is the function of the trier of fact to determine credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence." *People v. Hillier*, 392 Ill. App. 3d 66, 69 (2009). The trier of fact may draw all reasonable inferences from the circumstantial and direct evidence. *Id.*

¶ 45    We consider first the sufficiency of the evidence of sexual gratification or arousal. A defendant is guilty of predatory criminal sexual assault of a child if he

> "is 17 years of age or older, and commits an act of contact, however slight, between the sex organ or anus of one person and the part of the body of another for the purpose of sexual gratification or arousal of the victim or the accused, or an act of sexual penetration, and:
>
> > (1) the victim is under 13 years of age." 720 ILCS 5/11-1.40(a)(1) (West 2016).

"The intent to arouse or satisfy sexual desires can be established by circumstantial evidence, and the trier of fact may infer a defendant's intent from his conduct." *People v. Burton*, 399 Ill. App. 3d 809, 813 (2010). "A defendant's intent to arouse or gratify himself sexually can be inferred solely from the nature of the act." *Id.*

¶ 46    In this case, the evidence established that defendant touched J.M.'s vagina for the purpose of sexual gratification or arousal. J.M. and B.M. testified that defendant touched their vaginas during the night or early morning hours. At that time, both victims and the other individuals in the house were sleeping or trying to sleep. B.M. even told defendant to stop touching her vagina and defendant did not comply. Defendant only stopped touching B.M. when she kicked him. Under these circumstances, defendant's actions could not have had an innocent purpose like accidental

16

contact or contact required by a medical exam or procedure. See *People v. Balle*, 234 Ill. App. 3d 804, 814 (1992) (evidence established the element of sexual arousal or gratification where defendant touched the victim's vagina and there was no inadvertent, accidental, or medical explanation for the contact). Therefore, the fact finder reasonably inferred that defendant touched J.M.'s vagina for the purpose of sexual gratification or arousal.

¶ 47 We next consider defendant's challenge to the credibility of the victims' testimony. We find that the testimony provided by both J.M. and B.M. regarding defendant's sexual abuse was consistent with each other and across the varying interviews that led up to the trial. At trial, both victims testified, consistent with their CAC interviews, that defendant touched their vaginas while they were lying on the couch. This testimony was unrefuted. Moreover, the record includes no indication that the victims had a motive to make false accusations against defendant as Elizabeth had a friendly relationship with defendant and Michelle had a sexual relationship with defendant. Given this consistency and lack of motivation to lie, we find that the circuit court's credibility determinations were reasonable. Therefore, we defer to these credibility determinations and conclude that the evidence was sufficient to prove defendant's guilt of predatory criminal sexual assault of a child and aggravated criminal sexual abuse beyond a reasonable doubt.

¶ 48 C. Constitutionality of Section 11-1.40 of the Criminal Code of 2012

¶ 49 Defendant argues the predatory criminal sexual assault of a child statute is unconstitutionally vague as applied to him because it does not adequately define "contact." We find that the statute is not unconstitutional as the legislature intended for "contact" to have its ordinary and popularly understood meaning.

17

¶ 50　　　　　An as-applied constitutional challenge considers whether a statute is unconstitutional when applied to defendant's situation. *People v. Garvin*, 2013 IL App (1st) 113095, ¶ 17. This is a "pure question of law" that we review *de novo*. *People v. Jones*, 223 Ill. 2d 569, 596 (2006).

¶ 51　　　　　Section 11-1.40 of the Criminal Code of 2012 states:

> "A person commits predatory criminal sexual assault of a child if that person is 17 years of age or older, and commits an act of contact, however slight, between the sex organ or anus of one person and the part of the body of another for the purpose of sexual gratification or arousal of the victim or the accused ***." 720 ILCS 5/11-1.40(a) (West 2016).

¶ 52　　　　　Section 11-1.40 does not define the term "contact." "When a statutory term is undefined we assume the legislature intended the word to have its ordinary and popularly understood meaning and that we may ascertain this meaning through the use of contemporary dictionaries." *People v. Witherspoon*, 2019 IL 123092, ¶ 21. The Lexico dictionary defines "contact" as "[t]he state of physical touching." Lexico Dictionary, https://www.lexico.com/en/definition/contact (last visited October 25, 2019). This definition creates a relatively broad standard for "contact" that encompasses any type of touching. This broad definition aligns with the language of the rest of the statute which specifies "an act of contact, *however slight*" is sufficient to be found guilty of predatory criminal sexual assault of a child. (Emphasis added.) 720 ILCS 5/11-1.40(a) (West 2016). The plain language of the statute, thus, makes clear that "contact" encompasses any touching. What defendant considers to be a vague term is intentionally broad so that it encapsulates a wide array of touches. Therefore, we conclude that the statute is not unconstitutionally vague.

¶ 53　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 54    The judgment of the circuit court of McDonough County is affirmed.

¶ 55    Affirmed.