# Illinois Official Reports

## Appellate Court

---

**_People v. Bowers_, 2021 IL App (4th) 200509**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAURA BOWERS, Defendant-Appellant. |
| District & No. | Fourth District<br>No. 4-20-0509 |
| Filed | October 1, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 90-CF-227; the Hon. Karle Eric Koritz, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Anastasiya K. Lobacheva, Brett E. Legner, and Marc R. Kadish, of Mayer Brown LLP, and Rachel White-Domain, of Illinois Prison Project, both of Chicago, for appellant.<br><br>Scott Rueter, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and Luke McNeill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Cavanagh and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    In June 1990, defendant, Laura Bowers, pleaded guilty to first degree murder. Ill. Rev. Stat. 1989, ch. 38, ¶ 9-1(a)(1). Defendant, along with her co-conspirators Benjamin McCreadie and William Nemitz, killed defendant's husband, David Bowers. In August 1990, the trial court sentenced defendant to life in prison.

¶ 2    In December 2017, defendant *pro se* filed a petition for relief from judgment pursuant to section 2-1401(b-5) of the Code of Civil Procedure. 735 ILCS 5/2-1401(b-5) (West 2016). Section 2-1401(b-5) was enacted in 2015 and allowed incarcerated survivors of domestic violence to petition the trial court for a resentencing hearing at which the defendant could present mitigating evidence that the victim of the crime for which she was convicted had abused the defendant. Defendant attached to her petition an affidavit that described the abuse that she had suffered from David.

¶ 3    In July 2020, the State filed an amended motion to dismiss, arguing that defendant's petition was untimely pursuant to section 2-1401(c) (*id.* § 2-1401(c)), which imposes a two-year statute of limitations for a defendant to file a petition for relief from judgment. In September 2020, the trial court conducted a hearing at which it granted the State's motion, concluding that defendant's petition was untimely because the statute of limitations required that the petition be filed within two years from the date of the judgment.

¶ 4    Defendant appeals, arguing the trial court erred when it dismissed her petition as untimely because (1) the structure of section 2-1401(b-5) reflects the legislature's intent to provide relief to petitioners who were sentenced more than two years before its passage and (2) a literal application of section 2-1401(c) would produce an absurd result that is contrary to the legislature's intent and principles of equity.

¶ 5    We affirm.

## I. BACKGROUND

¶ 6

¶ 7    As an initial matter, we note that this case turns on the single question of whether the statute of limitations applies to defendant's petition. For that reason, we need not discuss in detail the underlying facts of defendant's offense or petition and do so only to the extent necessary to provide context for the reader.

### A. The Charges

¶ 8

¶ 9    In March 1990, the State charged defendant with six counts of first degree murder. In June 1990, defendant ultimately pleaded guilty to one count of murder, which alleged that defendant and her co-conspirators Benjamin McCreadie and William Nemitz, "with the intent to kill or do great bodily harm *** struck, choked, and stabbed David Bowers," who was defendant's husband. See Ill. Rev. Stat. 1989, ch. 38, ¶ 9-1(a)(1).

### B. Defendant's Guilty Plea and Sentencing

¶ 10

¶ 11    In June 1990, defendant pleaded guilty to first degree murder. In August 1990, the trial court conducted defendant's sentencing hearing.

¶ 12    At the sentencing hearing, defendant testified about her affair with her co-conspirator, McCreadie, and how McCreadie had abused her throughout their relationship. She testified

that McCreadie had threatened to kill her and talked about his plot to kill her husband in her presence. However, defendant claimed she did not participate with the plot and did not warn her husband because she did not think McCreadie would go through with the murder. When asked, "how did you get along with your husband," defendant replied, "Good. Very good." She was also asked, "Did you love him?" Defendant replied, "Very much."

¶ 13    Defendant acknowledged that she (1) dropped off her co-conspirators at her apartment, (2) signaled them via phone call when David was supposed to arrive, (3) reminded her co-conspirators to bring her checkbook and wallet from the apartment, and (4) drove around the block before picking up her co-conspirators following the murder.

¶ 14    When making a recommendation, defendant's counsel made no argument that defendant murdered David because he abused her.

¶ 15    In her statement in allocution, defendant said, "I loved my husband very much, and I'm not a deceitful person. All I did was try to protect him."

¶ 16    The trial court noted,

"Seldom do you find a case[,] a victim so free of any cause, reason to have his life taken, in so often there may be a wife beater, or there may be something of that nature, in which the defendant thinks he has reason to resort to the extreme action of taking a life. But, in this case, I've heard nothing at all, in which you could place any cause, reason, or blame on the victim for what happened. All the evidence is to the contrary."

¶ 17    The trial court sentenced defendant to life in prison.

¶ 18                        C. Defendant's Petition for Relief From Judgment

¶ 19    In December 2017, defendant *pro se* filed a petition for relief from judgment pursuant to section 2-1401(b-5) of the Code of Civil Procedure. 735 ILCS 5/2-1401(b-5) (West 2016). The legislature enacted section 2-1401(b-5) in 2015, which states the following:

"(b-5) A movant may present a meritorious claim under this Section if the allegations in the petition establish each of the following by a preponderance of the evidence:

(1) the movant was convicted of a forcible felony;

(2) the movant's participation in the offense was related to him or her previously having been a victim of domestic violence as perpetrated by an intimate partner;

(3) no evidence of domestic violence against the movant was presented at the movant's sentencing hearing;

(4) the movant was unaware of the mitigating nature of the evidence of the domestic violence at the time of sentencing and could not have learned of its significance sooner through diligence; and

(5) the new evidence of domestic violence against the movant is material and noncumulative to other evidence offered at the sentencing hearing, and is of such a conclusive character that it would likely change the sentence imposed by the original trial court.

Nothing in this subsection (b-5) shall prevent a movant from applying for any other relief under this Section or any other law otherwise available to him or her." *Id.*

¶ 20　　Defendant attached to her petition an affidavit that described the abuse she had suffered from David. She averred that David raped her, threatened her with firearms, and beat her.

¶ 21　　In January 2020, the State filed a motion to dismiss, arguing that defendant's petition was untimely pursuant to section 2-1401(c), which imposes a two-year statute of limitations for a defendant to file a petition for relief from judgment. See *id.* § 2-1401(c).

¶ 22　　In February 2020, defendant filed a response to the State's motion in which she argued that her petition was timely because the plain language of the statute did not demonstrate an intent to limit relief to domestic violence survivors who were sentenced within two years of the new statute's enactment.

¶ 23　　In July 2020, the State filed an amended motion to dismiss that contained substantially the same arguments as its prior motion, except that the State removed citation to an unpublished case that it had relied upon in the original motion.

¶ 24　　In September 2020, the trial court held a hearing at which it granted the State's motion, concluding that defendant's petition was untimely because the statute of limitations required that the petition be filed within two years from the date of the judgment. In so concluding, the court noted, "It would be entirely consistent with [the legislature's] policy rationale behind enacting Subparagraph (b-5) to go back more than two years." However, the court explained, "They didn't do that, and I don't think it was just an oversight." The court believed the two-year statute of limitations would be "glaringly obvious to the legislature, and they chose not to use a different limitations period."

¶ 25　　This appeal followed.

¶ 26　　　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 27　　Defendant appeals, arguing the trial court erred when it dismissed her petition as untimely because (1) the structure of section 2-1401(b-5) reflects the legislature's intent to provide relief to petitioners who were sentenced more than two years before its passage and (2) a literal application of section 2-1401(c) would produce an absurd result that is contrary to the legislature's intent and principles of equity. We disagree and affirm.

¶ 28　　　　　　　　　　　　A. The Statute of Limitations Applies

¶ 29　　Defendant argues that the statute of limitations does not apply to defendant. We disagree.

¶ 30　　　　　　　　　　　　　　　　　　1. *The Law*

¶ 31　　"The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent." (Internal quotation marks omitted.) *People v. McChriston*, 2014 IL 115310, ¶ 15, 4 N.E.3d 29. "The best way to determine the legislature's intent is to give the statutory language its plain and ordinary meaning." *People v. Rowell*, 2020 IL App (4th) 190231, ¶ 16 (citing *People v. Witherspoon*, 2019 IL 123092, ¶ 21, 129 N.E.3d 1208). "Where statutory language is clear and unambiguous, courts should apply the statute as written." *Id.* (citing *People v. Eppinger*, 2013 IL 114121, ¶ 21, 984 N.E.2d 475). "We may not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that the legislature did not express." (Internal quotation marks omitted.) *Witherspoon*, 2019 IL 123092, ¶ 24.

¶ 32                                                    2. *This Case*

¶ 33          Defendant's arguments fall short for the simple reason that the statute clearly states that the petition is subject to a two-year statute of limitations. It states that, with some exceptions, "the petition must be filed not later than 2 years after the entry of the order or judgment." 735 ILCS 5/2-1401(c) (West 2016). Even defendant notes, "To be sure, [section] 2-1401(c) generally contemplates that defendants must file any petition for relief within two years after the entry of a final judgment, with certain exceptions." Subsection (b-5) is not listed as one of those exceptions. The plain language of the statute clearly establishes a two-year statute of limitations and, for the reasons we discuss below, defendant's arguments to the contrary are unavailing.

¶ 34          Defendant argues that the legislature did not intend for the two-year statute of limitations to apply to petitioners, like defendant, seeking relief under subsection (b-5). In support, defendant makes numerous arguments that largely fall into two categories: (1) other restrictions on a defendant's ability to obtain relief under subsection (b-5) and (2) the legislature's clear intent to provide "backward-looking relief" both show that the legislature did not intend for the statute of limitations to apply.

¶ 35          First, other restrictions on a defendant's ability to obtain relief under subsection (b-5) do not show that the legislature intended for those restrictions alone to apply. For example, defendant notes that subsection (b-5) contains a "diligence" requirement and suggests that this "requirement more logically applies as the relevant temporal limitation on filing[s] ***." This may be so, but our job is not to pick and choose which requirements we view as most logical but instead to give effect to the legislature's intent. Further, the suggestion that we would have to choose what restriction applies simply makes no sense. Oftentimes litigants face numerous restrictions that they must satisfy or overcome before they can file a particular pleading or motion, but the existence of one restriction does not preclude or diminish the existence of another. It can be true—in fact, it *is* true—that a defendant under subsection (b-5) must both exercise diligence and file her petition within the statute of limitations.

¶ 36          Second, the mere fact that the legislature clearly intended to provide "backward-looking relief" does not support defendant's argument. Although we are sympathetic to defendant's argument that limiting that relief to defendants sentenced less than two years ago seems, at first glance, a little strange, reasons exist for the legislature's decision. The legislature may have chosen to work incrementally and decided to start with a relatively small number of eligible defendants before possibly expanding the law in the future. The legislature may have been concerned that, without this limitation, courts could be overburdened by the sudden rush of petitions and thus sought to limit these claims until the impact on the courts could be better understood. Of course, the best way to determine what the legislature intended is to look at the language of the law, and that language, as defendant notes, clearly shows that section 2-1401(c) "generally contemplates that defendants must file any petition for relief within two years after the entry of a final judgment."

¶ 37          We conclude that because the plain language clearly states that a two-year statute of limitations exists, that limitation applied to defendant and the trial court correctly granted the State's motion to dismiss.

¶ 38       B. Applying the Statute of Limitations Does Not Produce an Absurd
                   Result nor Is It Contrary to the Legislature's Intent

¶ 39       Defendant argues that applying the statute of limitations to defendant "would produce an absurd result that is contrary to the clear legislative intent and principles of equity." We disagree.

¶ 40       Defendant correctly recognizes that a court is "not bound by the literal language of a statute if that language produces absurd or unjust results not contemplated by the legislature." (Internal quotation marks omitted.) *People v. Revell*, 372 Ill. App. 3d 981, 989, 868 N.E.2d 318, 325 (2007).

¶ 41       This statute of limitations is simply not absurd. As earlier noted, valid reasons exist for why the legislature may have chosen to not revise the statute of limitations in section 2-1401. *Supra* ¶ 36.

¶ 42       Both parties discuss comments made by various legislators that supposedly show how a two-year limitations period for subsection (b-5) petitions does or does not make sense. Defendant also discusses the various policy implications of the statute of limitations, particularly how the statute limits domestic violence survivors from obtaining relief. However, legislators can have differing interpretations of a law, and parties can have strong policy disagreements about the law without that law being *absurd*. We conclude that the statute of limitations does not produce an absurd or unjust result not contemplated by the legislature.

¶ 43       Finally, we note that our interpretation of this statute is predicated on what we view as a decision by the legislature to have the statute of limitations apply in this case. If the legislature changes its mind or realizes that, somehow, this was an oversight, the legislature can revise section 2-1401.

¶ 44                              III. CONCLUSION
¶ 45       For the foregoing reasons, we affirm the circuit court's judgment.

¶ 46       Affirmed.